In re: The **CLIFTON E. MORTON REVOCABLE TRUST DATED SEPTEMBER 12, 2003,**

**Jason Shane Morton As Trustee under The Clifton E. Morton Revocable Trust Dated September 12, 2003, Plaintiff–Appellant,**

v.

**Regina D. Morton, et al., Defendants–Respondents.**

**No. SD 29620.**

Missouri Court of Appeals, Southern District, Division Two.

April 15, 2010.

Michael Fitzgerald, Kansas City, Jeffrey W. Heil, Joplin, for Appellant.

Eric M. Landoll, Nevada, for Respondents.

NANCY STEFFEN RAHMEYER, Judge.

Clifton E. Morton and Regina D. Morton (now Regina McMillan) created the Clifton & Regina Morton Revocable Trust ("the Joint Trust"), from which Clifton E. Morton ("Cliff")[1] later removed property in order to fund the Clifton E. Morton Revocable Trust ("the Cliff Morton Trust"). Jason Shane Morton, as Trustee of the Cliff Morton Trust, petitioned for a declaratory judgment that the steps Cliff took to fund the Cliff Morton Trust were effective and that the Trustee of that trust owned the subject property.[2] Jason Shane Morton, Jesse Craig Morton, and Gina Marie Morton (collectively, "Appellants") were beneficiaries of the Cliff Morton Trust and denominated as co-plaintiffs prior to trial. The Circuit Court of Jasper County found in favor of defendants,[3] including Regina, and denied declaratory relief, from which Appellants brought this appeal. We affirm the judgment.

## FACTS

Cliff and Regina married on December

---

1. When we refer to the parties by first names it is for ease of discussion only and no disrespect is intended by using this convention.

2. The petition alleged additional counts, but we mention only those relevant to this appeal.

3. Regina was a defendant in her individual capacity and as representative for the remaining two defendants, corporations formed during the marriage. The parties will collectively be referred to as Respondents where necessary.

7, 1985. Cliff had three children[4] from a prior marriage, all of whom are Appellants, and Regina had two children from a prior marriage. Shortly before they married, Cliff and Regina formed what would ultimately become Joplin Pipe & Steel Supply, Inc. ("Joplin Pipe & Steel") and Chetopa Pipe & Steel, Inc. ("Chetopa Pipe & Steel"), with Regina and her mother initially funding the venture, and Cliff providing capital shortly thereafter. As the business became successful, Cliff and Regina both took on full-time roles managing its daily operations.

Cliff was diagnosed with prostate cancer in 1998, and initial treatments slowed the progression of the cancer. By 2002, however, the cancer had spread throughout his body. In May of 2002, Cliff and Regina contacted an attorney for assistance in creating an estate plan. The attorney who drafted the Joint Trust testified that the parties' concerns were probate avoidance, potential tax consequences upon the death of either party, the desire to provide for the surviving spouse during his or her lifetime, and ultimately to divide their jointly owned assets in a fair manner upon the death of the latter to die. After several meetings with the attorney, the parties executed the Joint Trust on June 19, 2003, but did not fund it with anything other than a general assignment of household goods and personal effects at that time. Their attorney did not review the specific provisions of the Joint Trust or the legal consequences of it.

In August, the day before the parties were preparing to fly to Houston for further cancer treatment, Cliff arranged for their attorney to draft documents to fund the Joint Trust with assets, including the jointly-owned residence and ten acres, all the horses, and stock certificates for all the shares of the two closely held companies. In a meeting that lasted 30–45 minutes after Regina returned from work at 5:30 p.m., and with no further discussion of the trust provisions, specifically the ability of either Cliff or Regina to transfer trust assets without the consent or knowledge of the other, Regina signed the asset-transferring documents. Regina testified that the reason she was given for the documents needing to be signed immediately was in case "something happens to both you and Cliff."

Cliff was informed in Houston that he appeared to have a tumor on his spine and that the cancer had possibly spread to his brain; he experienced debilitating pain and delusional thoughts that the hospital staff was beating him with sticks and attempting to kill him. Shortly after returning from Houston, Cliff filed an ex parte against Regina as he believed that she too had attempted to kill him when she administered morphine to him at his request after he fell in the hotel room in Houston.

Also upon his return from Houston, Cliff contacted the parties' estate attorney and asked if he could withdraw assets from the Joint Trust. The attorney reviewed the Joint Trust and advised Cliff that a provision of the Joint Trust possibly authorized him to convey up to one-half of the Joint Trust assets without the consent or knowledge of Regina. Cliff requested that a separate trust be set up, which the attorney began drafting; however, the attorney expressed being uncomfortable doing it and they arranged for a different attorney to formalize the document. The Cliff Morton Trust was signed on September 12, 2003, and made no provisions for Regina. Regina was not informed of the new trust.

4. Jesse Craig Morton was required to prove through DNA evidence that he was Cliff's son before having the right to any proceeds from either trust.

Cliff then transferred from the Joint Trust an undivided half tenant-in-common interest in the residence and ten acres, a half interest in the tangible personal property, and stock certificates representing 50 percent of the outstanding shares of the two closely held companies. After the transfer, Regina was requested to re-issue the stock shares to the Cliff Morton Trust; she refused. After Cliff's death, Jason Shane Morton brought this action as Trustee of the Cliff Morton Trust seeking a declaratory judgment that the steps Cliff took to fund the second trust were effective and that the Trustee of the second trust owned the subject property. It is the denial of these requests by the trial court that Appellants now appeal.

## Points Relied On

Appellants contend: (1) that the court erred in declaring the transfer of property "null and void" because, if it was a transfer in fraud of Regina's marital rights, only one-third of the transferred property was needed to fund Regina's elective share; (2) the court's finding that the transfers were in fraud of marital rights was unsupported by substantial evidence and against the weight of the evidence because there was no evidence that Cliff acted with the intent and purpose to deprive Regina of her marital rights; and (3) that the finding of the trial court that the transfers were in fraud of Regina's marital rights was in error because the court lacked jurisdiction to decide that issue in that it constituted a counterclaim that had not been pled as required under Rule 55.32.[5] For ease of

discussion, we shall address Appellants' third point first.

## Sufficiency of the Pleading

■ Appellants claim that the court had no jurisdiction[6] to determine whether Cliff's transfers to the Cliff Morton Trust were in fraud of Regina's marital rights because Regina did not plead that in an affirmative defense or counterclaim, and further, the pleading was not amended by implied consent. Respondents' filed their "Answer to Amended Petition" on October 13, 2005; however, the answer did not contain any affirmative defenses and/or a counterclaim. Subsequently, the cross-claims of Gina Marie Morton and Jesse Craig Morton were filed. Respondents did not file a responsive pleading until the court trial of September 2, 2008, which we found in a docket sheet entry that noted, "Defendants/Respondents Joplin Pipe & Steel, Inc. and Chetopa Pipe & Steel, Inc. filed in open court: Answer to Cross Claim of Gina Marie Morton and Answer to Cross Claim of Jessie Morton." That answer was not provided to this Court in the legal file on appeal.

Although Appellants argue that the pleadings were not amended by implied consent, even though there was no objection to any evidence, Appellants contend "evidence must bear only on that issue and not be relevant to an issue already in the case," citing *McDonald v. McDonald,* 814 S.W.2d 939, 947–48 (Mo.App. S.D.1991). Our problem with this contention is that Appellants' argument gives us no insight

---

**5.** All rule references are to Missouri Court Rules (2009), and all references to statutes are to RSMo 2000, unless otherwise specified.

**6.** We read Appellants' use of the word "jurisdiction" in light of *J.C.W. ex rel. Webb v. Wyciskalla,* 275 S.W.3d 249 (Mo. banc 2009), to be that the court has exceeded its statutory authority. *Id.* at 253 (making clear that prior

cases labeling mere error to be "jurisdictional" no longer should be followed as there are only two types of jurisdiction in Missouri state courts: personal and subject matter.) The trial court in this case had both. Appellants' claim is that the court exceeded statutory authority.

into what action was actually pled, how the elements necessary to prove fraud of marital rights differed from the pleading, and, more importantly, what evidence was presented in this trial that was relevant on the pled action but not relevant for a claim of fraud of marital rights. Without the pleadings or alleged facts that demonstrate the issue already in the case, it is impossible to determine whether evidence admitted without objection was relevant solely to that issue. Appellants have the duty of providing a record complete with all materials necessary to decide the point in question. *Hedrick v. Dir. of Revenue,* 207 S.W.3d 675, 677 (Mo.App. S.D.2006). Absent the necessary materials, this Court has nothing do decide. *Id.* Point III is denied.

### Error in Finding Fraud of Marital Rights

■ We shall next address Appellants' first and second points, which claim both a failure of proof on fraud of marital rights and the wrong remedy for that claim. Appellants requested findings of fact and conclusions of law.[7] The trial court found that Appellants failed to present any controverted factual issues and thus waived any findings of fact or conclusions of law, and that all its findings were gratuitous and in accordance with the result. That finding has not been questioned in this appeal.

In its judgment, the trial court found that evidence was presented at trial without objection that raised issues beyond the pleadings. The court specifically found that to the extent the issues were presented to the court without objection, they were tried by implied consent of the parties and treated as if they were pled. The court further found that at the time of the

execution of the Joint Trust and of the funding of the Joint Trust, Cliff and Regina shared a confidential relationship; the parties intent was to provide for both Cliff and Regina during their lifetimes and to avoid probate. Subsequent to the execution of the Joint Trust, but prior to the funding of the Joint Trust, Cliff engaged in a course of conduct designed to deprive Regina of marital and individual assets. The actions of Cliff were made without adequate consideration and without Regina's consent. The court concluded Cliff's actions violated section 474.150, in fraud of marital rights.

For guidance we look to a recent decision by our Supreme Court, where the court noted:

> Any person who is interested as or through a trustee or other fiduciary in the administration of a trust or of the estate of a decedent may have a declaration of rights or legal relations with respect to: (1) ascertaining any class of legatees or heirs; (2) directing the trustee to do or abstain from doing any particular act in their fiduciary capacity; or (3) determining any questions arising in the administration of the trust. *See* Rule 87.02(b); section 527.040.

*Lynch v. Lynch,* 260 S.W.3d 834, 837 n. 8 (Mo. banc 2008).

In *Lynch,* the plaintiffs contended that certain portions of a trust were void and unenforceable. *Id.* at 836. Their petition alleged that the wife "placed her confidence in her husband in the belief that he would act and respect her wishes to provide for [Plaintiffs] in the manor (sic) he promised he would and having failed in said promise the [Defendants] are unjustly enriched." *Id.* at 837. The thrust of

---

7. Appellants also failed to include their request for findings of fact and conclusions of law in the record before us on appeal.

plaintiffs' argument was that the husband took advantage of this confidential relationship with the wife by excluding them as beneficiaries of the trust and they asserted that, if they were successful in proving those allegations in their petition, a constructive trust on the trust assets should be imposed in their favor against defendants. *Id.*

Our Supreme Court set out the requirements for a constructive trust:

A constructive trust is an equitable device employed by "courts of equity to remedy a situation where a party has been wrongfully deprived of some right, title or interest in property as a result of fraud or violation of confidence or faith reposed in another." *Kohm v. Kohm (In re Estate of Davis)*, 954 S.W.2d 374, 379 (Mo.App.1997). The touchstone for imposition of a constructive trust is injustice or unfairness, which may be the product of undue influence or abuse of a confidential relationship. *Brown v. Brown*, 152 S.W.3d 911, 918 (Mo.App. 2005). It is "imposed where a person who holds title to property is under a duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." *Matlock v. Matlock*, 815 S.W.2d 110, 114 (Mo.App.1991). A constructive trust arises without regard to the parties' intention. *Id.*

*Id.* at 837–38. The Supreme Court concluded that

Plaintiffs seek to have a trust provision voided for alleged undue influence or

violation of confidence, not for the failure of the trust. By requesting the imposition of a constructive trust on assets that Defendants are to receive, Plaintiffs pled an appropriate remedy. The dismissal of their cause of action was error. If Plaintiffs can prove the necessary facts to show that they are entitled to share in the trust's assets, the imposition of a constructive trust is a proper remedy. Because the trial court dismissed Plaintiffs' suit, they did not have the opportunity to engage in discovery and attempt to demonstrate that they are entitled to a constructive trust. Plaintiffs should have been given this opportunity.

*Id.* at 838.

In this case, it is clear that the court imposed a constructive trust on the property that was transferred from the Joint Trust to the Cliff Morton Trust. In doing so, the court declared the transfer null and void, which left the property in the marital trust.[8] On review, we are primarily concerned with the correctness of the result, not the route taken by the trial court to reach it. *Basham v. City of Cuba*, 257 S.W.3d 650, 653 (Mo.App. S.D.2008). Though the court found fraud of marital rights, substantial evidence supports the trial court's judgment regarding the imposition of a constructive trust.

Cliff and Regina were married at the time that all of the assets at issue in this appeal were created; the Joint Trust which Regina signed clearly indicates that the entire trust was drafted with a concern

---

**8.** This case differs from *Riggio v. Southwest Bank of St. Louis*, 815 S.W.2d 51 (Mo.App. E.D.1991), cited by Appellants, in the crucial fact that *Riggio* involved a suit where the property was held individually by a person who died intestate. These parties had transferred the property to a trust that has not been challenged. Additionally, Appellants rely on section 474.150 to argue that upon a find-ing of fraud of marital rights, the proper remedy is a recovery of property transferred in fraud of marital rights and distribution to the surviving spouse according to the share she would have received had she elected to take against the will. We note that Chapter 474 is entitled "Probate Code—Intestate Succession and Wills," and decline to apply its provisions to the facts of this case.

for each other's care. Almost every provision of the trust indicates that the decisions were to be made by the both of them jointly. The document that Regina signed contained a provision that

> [o]n the death of one of the Grantors, the survivor shall have the right alone to amend, revoke, or terminate this Trust or portion thereof as hereinafter specified in Section 3, or to withdraw any or all the property from this Trust at any time. It is not intended that this Trust be contractual, and the survivor shall be the complete and absolute owner of all property in the Trust on the first death, with no restrictions on how he or she disposes of the property on his or her death.

There were further provisions that any amendment or revocation of the Joint Trust must have been signed by the "Grantors," in the plural. This is particularly significant because every asset placed in the Joint Trust that is at issue in this appeal was owned by the parties by the entirety prior to the funding of the Joint Trust. Regina gave up significant rights by agreeing to fund the Joint Trust with joint assets.

Although Appellants relied upon the provision,

> however, one of us alone has the right to withdraw the property of this Trust at any time, from time to time, but not to exceed any aggregate of one-half of the total property of the Trust, except a necessary or desirable pursuant to the second paragraph of Item 2A,

to support Cliff's withdrawal of one-half of the trust funds, an overall reading of the document indicates that any withdrawal was to benefit both of them.

It is clear the parties had a confidential relationship with each other concerning the disposition of their assets. Cliff and Regina created a Joint Trust, not two separate trusts, that was for both of their benefit. In addition to being the Grantor, Cliff was a Trustee for Regina's benefit; his conduct in the creation and transfer of assets to a separate trust without her knowledge and with no benefit to her breached that duty to Regina.

Because of that confidential relationship between Cliff and Regina, sufficient evidence supports a conclusion that Cliff's actions in changing the beneficiary designation of his life insurance policy prior to funding the Joint Trust and without notice to Regina, as well as creating a new trust with joint assets which excluded any benefit to Regina, wrongfully deprived Regina of her right, title, and interest in property, and that deprivation was as a result of Cliff's fraud or violation of confidence. The fact that Regina was handed documents to fund the Joint Trust under the circumstances of preparing for a trip to a cancer center with no independent legal advice further supports a finding of a breach of the confidential relationship between Cliff and Regina.

█ Although the trial court may not have articulated a specific finding of a constructive trust in its judgment, it is clear that the evidence and the court's conclusions support the finding of a constructive trust. A correct decision will not be disturbed because the court gave a wrong or insufficient reason. *Mann v. Dir. of Revenue*, 140 S.W.3d 106, 109 (Mo. App. S.D.2004). Points I and II are denied.

The judgment is affirmed.

LYNCH, P.J., QUITNO, SP.J., concur.