

# In the Missouri Court of Appeals
# Eastern District

### DIVISION FOUR

| | | |
|---|---|---|
| BETTY MINOR, | ) | No. ED101131 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| JOSEPH McCARY and | ) | Appeal from the Circuit Court |
| JOHN MICHEAL McCARY, | ) | of St. Charles County |
| | ) | 0911-CV11957 |
| Appellants, | ) | |
| | ) | |
| vs. | ) | Honorable Nancy L. Schneider |
| | ) | |
| DAVID W. TERRY, KATHLEEN | ) | |
| SCHILLER, JACQUELYN | ) | |
| HIGHFILL, and | ) | |
| FELLOWS, BLAKE & TERRY, L.L.C., | ) | |
| | ) | |
| Respondents. | ) | Filed: October 28, 2014 |

Joseph ("Joe") McCary and John Micheal ("Mike") McCary (collectively "Appellants")

appeal the grant of summary judgment in favor of David W. Terry and Fellows, Blake & Terry,

L.L.C. (collectively "Terry"[1]) and the grant of summary judgment in favor of Kathleen Schiller

and Jacquelyn Highfill on Appellants' cross-claims. We affirm the grant of summary judgment

to Terry for Appellant's breach of fiduciary duty and legal malpractice claims, affirm the grant of

summary judgment to Schiller and Highfill for Appellants' negligence and conspiracy to defraud

---

[1] Terry was named as a defendant in this case in his individual capacity. His law firm, Fellows, Blake & Terry, L.L.C. was also named as a defendant, but only through Terry's actions as agent. As such, all references to "Terry" collectively refer to Terry individually and his law firm Fellows, Blake & Terry, L.L.C.

claims, but reverse and remand the grant of summary judgment in favor of Schiller and Highfill for Appellants' fraud claim.[2]

# I.     BACKGROUND

This case has a complex factual and procedural history.  Matilda McCary died in 2003 while in the care of a nursing home.  Two of McCary's children, Schiller and Highfill, retained Terry to pursue a wrongful death lawsuit against the nursing home.  Schiller and Highfill are Appellants' sisters and Matilda McCary was their mother.  Appellants did not retain Terry and never had a fee agreement with him.

Terry filed a wrongful death lawsuit on behalf of Schiller and Highfill, styled *Kathy Schiller & Jacquelyn Highfill v. National Health Care Corp., et al,* Case No. 0511-CV04821. Appellants were not named parties in the suit and never sought legal advice from Terry regarding the suit.  The parties settled the wrongful death lawsuit.  In August 2007, Terry sent Appellants letters via certified mail notifying them of the settlement hearing:

> I represent your sisters, Kathy Schiller and Jackie Highfill in a wrongful death claim against several defendants . . . Pursuant to the Revised Statutes of Missouri §537.095, a plaintiff in such action must notify all those in the class of people eligible to participate in the lawsuit before the matter is finalized.  Since you are a member of the class, you are eligible to be notified that this matter has been concluded.  In Missouri, wrongful death cases must be approved by a judge during a settlement hearing.  Members of the wrongful death class are entitled to be provided notice of when and where the settlement hearing will take place.
>
> If you wish to attend the settlement hearing and make a claim, you must do so prior to the time this hearing is finally concluded.  We currently have set a hearing to conclude the matter for **Monday, September 17, 2007 beginning at 9:00 a.m.** If you plan on attending the hearing, you must report to **Division 1 of the St. Charles County Circuit Court, 300 North Second Street, St. Charles, Missouri 63303 at that time.**  (Emphasis in original).

---

[2] Two motions were submitted with this case.  Schiller and Highfill filed a motion for attorneys' fees and Appellants filed a motion to strike Schiller and Highfill's Respondent's brief.  Both motions are denied.

The parties dispute what happened next. Mike McCary admits that he signed the letter's receipt, but Joe McCary asserts by affidavit that someone else signed his name to the letter's receipt. In any event, Appellants have presented no evidence to suggest that the letters were not sent to their correct addresses or that Appellants were unaware of the scheduled hearing. However, both Appellants assert via affidavit that Schiller and Highfill told them "it would be better if none of the family attended[,]" including Appellants. Appellants also assert in their affidavits that Schiller and Highfill directed them to sign notarized statements to the court allowing Schiller and Highfill to distribute the settlement as they saw fit, and that if Appellants did not do so, Schiller and Highfill would take them out of the settlement entirely. Finally, Appellants assert that Schiller and Highfill told Appellants they could not reveal the settlement amount due to a nondisclosure agreement. In response, Schiller and Highfill presented their own deposition testimony and deposition testimony from another sibling, Peggy Andrews, refuting Appellants' assertions.

Appellants did not attend the September 17, 2007 settlement hearing. At the hearing, the court held that all members of the class of claimants received proper notice of the hearing. The court also found that Appellants signed notarized documentation concurring with the disbursement decisions made by Schiller and Highfill. Further, the court found that Betty Minor, another McCary sibling, was estranged from her family, was specially excluded from her mother's will, and therefore took nothing from the settlement. Finally, the court approved the percentages of the settlement proceeds distribution to each member of the class after deducting attorney's fees, expenses, and liens from the total amount. Schiller and Highfill each received 25% of the settlement after deductions, and Appellants each received 10%.

Thereafter, in December 2009, Minor filed the present suit. Minor alleged Terry was negligent and breached his fiduciary duty to her by failing to apprise her of the status of the litigation, by failing to use reasonable efforts to locate her once a settlement was reached, by allowing the settlement to be approved without her knowledge and consent, and by allowing the disbursement to deny her recovery. Minor also alleged counts against Schiller and Highfill for negligence, fraud, collusion, and injurious falsehood, claiming they intentionally provided Terry with false contact information, made false statements about her relationship with her mother, and allowed the settlement funds to be disbursed without her consent.

Schiller and Highfill filed a cross-claim petition against Terry, alleging that as their attorney, Terry failed to advise them of the statutory notice requirements. Terry also filed a cross-claim petition against Schiller and Highfill for contribution, indemnification, and fraud.

The parties mediated the dispute and reached a settlement.[3] Appellants were not present at the mediation, but Schiller and Highfill represented that they had authority to settle on behalf of all members of the wrongful death class, including Appellants. All parties signed and executed the settlement agreement except Appellants and their father, Jack McCary, each of whom refused to sign. Terry filed motions to compel settlement and to join Appellants and their father as cross-claim plaintiffs. The motion to join stated that Appellants and their father could potentially seek to recover damages from Terry because the same questions of law and fact asserted by Minor could potentially be asserted by Appellants and their father against Terry. The trial court granted Terry's motion to join.

Appellants then filed an amended petition asserting cross-claims against Terry, Schiller, and Highfill. Appellants' cross-claims against Terry were for breach of fiduciary duty (Count I)

---

[3] Minor's claims against Terry, Schiller, and Highfill and the cross-claims between Schiller and Highfill and Terry have been settled and are not the subject of this appeal.

4

and legal malpractice (Count II)[4]. Appellants alleged Terry represented all of Matilda McCary's beneficiaries in the underlying litigation. Therefore, Appellants alleged Terry owed them a duty to keep them apprised of the litigation and to ensure an equal and fair distribution of the settlement proceeds. Appellants alleged Terry breached this duty, depriving Appellants of a reasonable share of the settlement proceeds. Appellants alleged counts of negligence (Count I), fraud (Count II), and conspiracy to defraud (Count III) against Schiller and Highfill for allegedly misleading Appellants about their rights under the litigation and the amount of the settlement.

Terry filed a motion for summary judgment on Appellants' breach of fiduciary duty and legal malpractice claims. Schiller and Highfill also filed a motion for summary judgment for Appellants' claims against them. The trial court granted both motions. This appeal followed.

## II.    DISCUSSION

Appellants raise four points on appeal. First, Appellants assert the trial court erred in granting summary judgment to Terry because Terry owed them a duty of care, and there were unresolved genuine issues of material fact as to whether Terry breached that duty. Second, Appellants contend the trial court erred in granting summary judgment to Terry because Terry should have been judicially estopped from asserting that he did not owe them a duty of care or that an attorney-client relationship did not exist. Third, Appellants argue the trial court erred in granting summary judgment to Terry because Terry had a general duty to ensure that Missouri's wrongful death statute was followed and that the distribution of the settlement proceeds complied with the law. Fourth, Appellants maintain the trial court erred in granting summary

---

[4] In their amended cross-claim petition, Appellants styled Count II as "Negligence," rather than legal malpractice. However, Appellants appear to have intended to allege legal malpractice. Legal malpractice is a negligence-based cause of action. *Klemme v. Best*, 941 S.W.2d 493, 495 (Mo. banc 1997). Appellants alleged in the amended cross-claim petition that "[i]n [his] capacity as attorney for the beneficiaries of Ms. McCary, Attorney . . . owed a general duty of care to [Appellants] . . ." Further, Appellants have briefed and argued this appeal based on a claim for legal malpractice.

5

judgment to Schiller and Highfill because they pleaded submissible cases of fraud, negligence, and conspiracy to defraud, and there existed unresolved genuine issues of material fact.

## A. Standard of review

Summary judgment is reviewed essentially *de novo* and affirmed only where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *ITT Commercial Finance Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). A defendant may establish summary judgment is appropriate by showing: (1) facts negating any one of the plaintiff's elements necessary for judgment, (2) that the plaintiff has not produced evidence sufficient for the finder of fact to find the existence of one of the plaintiff's elements, or (3) facts necessary to support a properly pleaded affirmative defense. *Roberts v. BJC Health System*, 391 S.W.3d 433, 437 (Mo. banc 2013). We review the record in the light most favorable to the party against whom judgment was entered. *Id.*

## B. Counts against Terry

In their first, second, and third points on appeal, Appellants claim the trial court erred in granting summary judgment to Terry on their breach of fiduciary duty and legal malpractice claims. We disagree.

### 1. Duty of care

Appellants first argue the trial court erred in granting summary judgment to Terry because Terry owed Appellants a duty and there existed a genuine issue of material fact as to whether that duty was breached. Appellants assert that Terry owed them a duty under two different theories: (1) as clients and (2) as non-client beneficiaries.

6

### a. Clients

To make a submissible case of either legal malpractice or of an attorney's breach of a fiduciary duty, a plaintiff must first adduce substantial evidence of the existence of an attorney-client relationship.[5] *Klemme v. Best*, 941 S.W.2d 493, 495-96 (Mo. banc 1997). Like any agency relationship, the attorney-client relationship arises out of contract, either express or implied. *World Resources, Ltd. v. Utterback*, 943 S.W.2d 269, 270 (Mo. App. E.D. 1997). "It is an agreement whereby one person, the agent, consents with another, the principal, to act on behalf of the principal subject to the control of the principal." *Id.* A party's mere belief in an attorney-client relationship is insufficient to create such a relationship. *Mid-Continent Cas. Co. v. Daniel Clampett Powell & Cunningham, LLC*, 196 S.W.3d 595, 599 (Mo. App. S.D. 2006). Where no attorney-client relationship exists, no duty exists as a matter of law. *Id.* at 600.

Schiller and Highfill retained Terry to litigate their wrongful death claims arising from their mother's death. It is undisputed that Appellants did not have a fee agreement with Terry and never entered into an oral agreement with Terry. Appellants never sought legal advice from Terry and were not named parties in the wrongful death suit. Appellants contend, instead, that they believed that Schiller and Highfill entered into an attorney-client relationship on their behalf, but one party's mere belief in the existence of the attorney-client relationship is insufficient to form the required contract. *Id.* at 599. Nor does Terry's letter to Appellants notifying them of the hearing date create an attorney-client relationship. First, the letter specifically identified Schiller and Highfill as Terry's clients. Second, an attorney-client

---

[5] Legal malpractice and breach of fiduciary duty are closely related claims. If the alleged breach can be characterized as both a breach of the standard of care (negligence) and a breach of fiduciary duty, a plaintiff's sole claim is for legal malpractice unless the fiduciary breach is independent of any legal malpractice. *Klemme*, 941 S.W.2d at 496. Because both claims require a showing of an attorney-client relationship, we address them together.

relationship is not created merely because an attorney discusses the subject-matter of the litigation with a third party. *Id.* Terry did not owe Appellants a duty of care as clients.

### b. Non-clients

Under certain circumstances, attorneys may owe a duty to non-clients. *Donahue v. Shughart, Thompson & Kilroy, P.C.*, 900 S.W.2d 624, 629 (Mo. banc 1995). We determine the existence of such a duty through a balancing test, examining: (1) the client's specific intent that the purpose of the attorney's services was to benefit the non-client; (2) the foreseeability of harm to the non-client as a result of the attorney's negligence; (3) the degree of certainty that the non-client will suffer injury from attorney misconduct; (4) the closeness of the connection between the attorney's conduct and the injury; (5) the public policy interest in preventing future harm; and (6) the burden on the legal profession that would result from recognizing liability under the circumstances. *Id.*

The first factor, the client's specific intent to benefit the non-client, is the "ultimate factual issue . . .. A benefit that is merely incidental or indirect will not satisfy this factor." *Id*. at 628. Here, there is no evidence that Schiller and Highfill retained Terry with the specific intent to benefit Appellants, rather than themselves. Missouri's wrongful death statute, section 537.095 RSMo 2000,[6] allows for one member of the class to settle the claims and damages for the rest of the class. Any benefit the entire class stems from the class-based nature of the statute, not from Schiller and Highfill's intent to benefit Appellants.

In *Donahue*, an attorney's client directed the attorney to pay cash from a trust account and deed his home to his heirs upon his death. 900 S.W.2d at 625. The attorney did not correctly effectuate the transfers, and after the client's death, the transfers were held to be invalid. *Id*. The non-client heirs brought a legal malpractice action against the attorney, alleging

---

[6] All further references to section 537.095 are to RSMo 2000.

8

breach of fiduciary duty. *Id*. at 626. The Missouri Supreme Court held that the non-client heirs stated a claim for breach of fiduciary duty. *Id*. at 629. The Court applied the six factor test, and with respect to the specific intent element, found that the non-client heirs were the direct and exclusive beneficiaries of the attorney's services. *Id*. The Court reasoned that the client's primary purpose was to benefit the non-client heirs, and the client himself received no apparent benefit, other than the satisfaction that his property be distributed according to his wishes after his death. *Id.*

Here, Schiller and Highfill retained Terry in order to benefit themselves, as opposed to the client in *Donahue*, who received no benefit from the transaction. Schiller and Highfill hired Terry to pursue a wrongful death suit, and they served as the named plaintiffs in that suit. Appellants were unnamed class member plaintiffs to the suit. Any benefit conferred on Appellants, therefore, derived entirely from the benefit secured by Schiller and Highfill, pursuant to section 537.095. Because Appellants were not the direct and exclusive beneficiaries of the representation, *Donahue* is distinguishable. Schiller and Highfill did not retain Terry with the specific purpose of benefitting Appellants.

The second, third, and fourth factors are closely related. The alleged harm must be foreseeable, certain, and caused by the attorney's misconduct. The alleged harm and injury in this case was that Appellants did not get the same settlement percentages as Schiller and Highfill. This is not a legally cognizable injury. Missouri does not have a common law cause of action for wrongful death. *Sullivan v. Carlisle*, 851 S.W.2d 510, 516 (Mo. banc 1993). The extent of Appellants' rights, therefore, flows exclusively from the wrongful death statute. *Id*. at 512. "There is no minimum amount that must be awarded to any party designated as a taker under section 537.095.4. The trial court is not bound by a set percentage or a minimum; rather, the trial

9

court must exercise its discretion and, as instructed by the statute, distribute the proceeds in proportion to the losses suffered by each as determined by the court." *Parr v. Parr*, 16 S.W.3d 332, 337 (Mo. banc 2000) (quotations omitted). Appellants did not have a right to any specified percentage of the recovery, either by common law, or by statute. Appellants did not suffer an injury.

The fifth and sixth factors (the policy of preventing future harm and the burden on the profession of recognizing liability under the circumstances) weigh strongly against extending a duty to an attorney under these circumstances. There would be no deterrent to future harm because Appellants did not suffer an injury. And, as noted by the trial court, to hold that an attorney representing the named plaintiff in a wrongful death class has a duty to the other class members to ensure an equal settlement amount, to make them appear at the hearing, and to ensure they are represented, would put a huge burden on the legal profession in litigating future wrongful death actions, particularly those with large classes of beneficiaries.

Therefore, Terry did not owe Appellants a duty either as clients or non-client beneficiaries.

### 2.	Judicial estoppel

In their second point on appeal, Appellants assert the trial court erred in granting summary judgment to Terry on their breach of fiduciary duty and legal malpractice claims because Terry should have been judicially estopped from denying his attorney-client relationship with Appellants due to Terry's motion to join Appellants to the lawsuit.

"Judicial estoppel applies to prevent litigants from taking a position in one judicial proceeding, thereby obtaining benefits from that position in that instance and later, in a second proceeding, taking a contrary position in order to obtain benefits from such a contrary position at

10

that time." *Vinson v. Vinson*, 243 S.W.3d 418, 422 (Mo. App. E.D. 2007) (quotations omitted). Judicial estoppel applies where: (1) a party's later position was clearly inconsistent with its earlier position, (2) the party succeeded in persuading a court to accept the earlier position, and (3) where the party asserting inconsistent positions would derive an unfair advantage or impose an unfair detriment on the opposing party. *Id.*

Terry's position on summary judgment, denying an attorney-client relationship with Appellants, was not clearly inconsistent with his motion to join. In his motion to join, Terry stated that Appellants had an interest in the outcome of the suit and that if Appellants filed a separate lawsuit against Terry, it would involve the exact same questions of law and fact. Nowhere in the motion to join does Terry state that he had an attorney-client relationship with Appellants.

The mere joinder of an additional plaintiff to a lawsuit does not function as an admission of liability as to any element of the plaintiff's potential cause of action. Therefore, simply stating that Appellants' claim would involve the same exact questions of law and fact is not admitting that an attorney-client relationship existed. The two positions are not clearly inconsistent.

### 3. Duty to ensure compliance with the wrongful death statute

In their third point on appeal, Appellants argue the trial court erred in granting summary judgment to Terry on their breach of fiduciary duty and legal malpractice claims because Terry had a duty to Appellants to ensure that distribution of the settlement proceeds complied with section 537.095.

#### a. Notice

Section 537.095.1 requires the named plaintiff in a wrongful death action "satisfy the court that he has diligently attempted to notify all parties having a cause of action[.]" A certified

11

letter sent by the named plaintiff's attorney to the beneficiary's last known address fulfills the notice requirement. *Walkenhorst-Newman v. Montgomery Elevator*, 37 S.W.3d 283, 285-86 (Mo. App. E.D. 2000).

In August 2007, Terry sent Appellants letters via certified mail notifying them of the settlement hearing:

> I represent your sisters, Kathy Schiller and Jackie Highfill in a wrongful death claim against several defendants . . . Pursuant to the Revised Statutes of Missouri §537.095, a plaintiff in such action must notify all those in the class of people eligible to participate in the lawsuit before the matter is finalized. Since you are a member of the class, you are eligible to be notified that this matter has been concluded. In Missouri, wrongful death cases must be approved by a judge during a settlement hearing. Members of the wrongful death class are entitled to be provided notice of when and where the settlement hearing will take place.
>
> If you wish to attend the settlement hearing and make a claim, you must do so prior to the time this hearing is finally concluded. We currently have set a hearing to conclude the matter for **Monday, September 17, 2007 beginning at 9:00 a.m.** If you plan on attending the hearing, you must report to **Division 1 of the St. Charles County Circuit Court, 300 North Second Street, St. Charles, Missouri 63303 at that time.** (Emphasis in original).

Joe McCary asserted by affidavit that he did not sign for the certified letter and does not know who signed his name. However, Terry was not obligated under the statute to ensure actual notice of the letter or its contents. *Cf. id.* at 286-87 (finding that a certified letter was sufficient to put an ordinarily prudent person on notice of a wrongful death suit, even where beneficiary chose not to read the letter). Further, Appellants have presented no evidence to suggest that the letters were not sent to their correct addresses or that Appellants were unaware of the scheduled hearing. Terry fulfilled the notice requirements of section 537.095.1.

### b.     Settlement amounts

As noted above, there is no minimum amount or set percentage a trial court must award to each beneficiary under section 537.095.4. *Parr*, 16 S.W.3d at 337. Terry did not represent

Appellants. He had no duty to ensure Appellants received a specific amount of the total settlement, let alone equal shares to Schiller and Highfill, their clients. In fact, pursuing equal shares for Appellants at the expense of his clients' shares would have violated Terry's ethical duty to zealously represent only his clients' interests. *C.f.* Rule 4.17(a)(1)[7] (preventing a lawyer from representing one client where it will be directly adverse to the interests of another).

The trial court allowed Terry to apportion his fees among the total settlement amount, not just from the recovery of Schiller and Highfill, his clients. Section 537.095.4(2) requires a trial court to order the claimants to pay the "attorneys' fees as contracted." And, as here, "if the party sharing in the proceeds has no attorney representing him before the rendition of any judgment or settlement, then the court may award the attorney who represents the original plaintiff such fee for his services, from such persons sharing in the proceeds, as the court deems fair and equitable under the circumstances[.]" *Id.* Here, Appellants were not represented by counsel in the wrongful death proceeding. Therefore, pursuant to statute, the trial court had the discretion to award attorney's fees from Appellants' share, and Terry did not violate the terms of the statute by apportioning their fees in accordance with the trial court's order.

Appellants have presented no evidence that Terry did not fulfill his statutory obligations.

### 4.     Conclusion

Based on the foregoing, the trial court did not err in granting summary judgment in favor of Terry on Appellants' breach of fiduciary duty and legal malpractice claims. Points one, two, and three are denied.

### C.     Counts against Schiller and Highfill

In their fourth and final point on appeal, Appellants assert that the trial court erred in granting summary judgment in favor of Schiller and Highfill because Appellants pleaded

---

[7] All references to Rules are to Missouri Supreme Court Rules (2014).

submissible cases of negligence, fraud, and conspiracy to defraud, and there existed genuine issues of material fact.

## 1. Negligence

Appellants' negligence count asserts that Schiller and Highfill owed them a "general duty of care" and were negligent in that (1) Schiller and Highfill failed to keep Appellants' reasonably apprised of the status of the wrongful death suit, and (2) Schiller and Highfill allowed the trial court to approve an unequal settlement. This "general duty of care" is overbroad.

A legal duty to another may arise where it is prescribed by the legislature. *Hackmann v. Missouri American Water Company*, 308 S.W.3d 237, 239 (Mo. App. E.D. 2009). Here, section 537.095.1 imposes a duty on the named plaintiff in a wrongful death action to "diligently attempt[] to notify" all beneficiaries before settling the suit. A certified letter sent by the named plaintiff's attorney to the beneficiaries' last known address fulfills the notice requirement. *Walkenhorst-Newman*, 37 S.W.3d at 285-86.

Schiller and Highfill's retained counsel sent certified letters to Appellants, notifying them of the settlement hearing. This was the extent of Schiller and Highfill's statutory notice duty, and they met their obligations. Appellants have presented no evidence to suggest that the letters were not sent to their correct addresses or that Appellants were unaware of the scheduled hearing.

Also, Schiller and Highfill had no duty to ensure equal settlement amounts. Section 537.095.2 explicitly contemplates that each beneficiary may receive unequal amounts. It allows the trial court to apportion the settlement according to each beneficiary's respective losses. *Id.* There is no minimum amount or set percentage a trial court must award to each beneficiary. *Parr*, 16 S.W.3d at 337. Schiller and Highfill had no duty to ensure that Appellants received any

14

recovery, let alone equal shares. The trial court did not err in granting summary judgment in favor of Schiller and Highfill on Appellants' negligence count. Point four denied in part.

### 2. Fraud

Appellants' fraud count asserts that Schiller and Highfill acted to deprive Appellants' of their reasonable share of the settlement proceeds by (1) lying to Terry and the court regarding Appellants' knowledge of and desire to participate in the litigation, (2) lying to Terry and the court regarding their authority to act on behalf of Appellants, and (3) lying to Appellants regarding aspects of the litigation and the amount of the settlement.

The elements of a fraudulent misrepresentation are: (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or her ignorance of the truth, (5) the speaker's intent that the representation should be acted upon by the hearer in a manner reasonably contemplated, (6) the hearer's ignorance of the representation's falsity, (7) the hearer's reliance on the representation's truth, (8) the hearer's right to rely on the representation, and (9) injury to the hearer proximately caused by his reliance. *Professional Laundry Management Systems, Inc. v. Aquatic Technologies, Inc.*, 109 S.W.3d 200, 205 (Mo. App. E.D. 2003).

### a. The trial court's judgment

The trial court granted summary judgment because it found that Appellants failed to plead the circumstances of the alleged fraud with particularity and that Appellants had no right to rely on Schiller and Highfill's allegedly fraudulent statements. This ruling was in error.

All claims for fraud must state with particularity the circumstances constituting the fraud. Rule 55.15. Here, however, Schiller and Highfill failed to file a Motion for More Definite Statement pursuant to Rule 55.27(d) and, consequently, they waived the particularity

15

requirement. Rule 55.27(f); *Clark v. Olson*, 726 S.W.2d 718, 719 (Mo. banc 1987). Therefore, the trial court erred in granting summary judgment on the ground that Appellants failed to plead the circumstances of the alleged fraud with particularity.

The trial court also found that Appellants had no right to rely on Schiller and Highfill's representations. It stated:

> On the claim for fraud, [Appellants] allege without particularity that [Schiller and Highfill] made false and misleading statements[] to them 'about the nature of the litigation, their participation in the litigation and the amount of the settlement for the purpose of preventing . . . [Appellants] from attempting to participate in the litigation and obtain their fair and equitable share of the settlement.' This generalized conclusion is insufficient as a matter of law to support a fraud claim. Further, [Appellants] have not alleged and cannot show reasonable reliance on these generalized statements.

A trial court must make its decision to grant summary judgment based on the law, pleadings, and the record submitted. *Central Trust and Inv. Co. v. Signalpoint Asset Management, LLC*, 422 S.W.3d 312, 319 (Mo. banc 2014). Summary judgment is only appropriate where "pleadings, depositions, answers to interrogatories, and admissions on file, together with the supporting affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hayward v. Arnold*, 779 S.W.2d 342, 344 (Mo. App. W.D. 1989) (quotations omitted).

Here, the trial court only evaluated the statements alleged in Appellant's amended petition, not the statements evidenced in the summary judgment record. Appellants attached several exhibits to their joint response to Schiller and Highfill's motion for summary judgment, including affidavits from each Appellant. Specifically, the affidavits stated that Schiller and Highfill told Appellants they could not reveal the amount of the settlement agreement due to a non-disclosure agreement and that Appellants should not attend the settlement hearing. There remain genuine issues of material fact around these statements – whether they were indeed made,

16

whether Appellants relied on them in choosing not to attend the settlement hearing, and whether Appellants suffered injury from that reliance in the form of lower settlement portions. Schiller and Highfill submitted their own deposition testimony and deposition testimony from another sibling, Peggy Andrews, supporting their assertion that they never made such representations, but this is a factual dispute, and a trial court does not have authority to resolve conflicting testimony on summary judgment. *North Cent. County Fire Alarm System, Inc. v. Maryland Heights Fire Protection Dist.*, 945 S.W.2d 17, 21 (Mo. App. E.D. 1997).

Further, the fact that Appellants received letters from Terry informing them of the hearing does not negate their right to rely on the alleged misrepresentation. "When distinct and specific representations have been made and are to be acted upon, the representee has the right to rely on the representation even if the parties stand on equal footing or have equal knowledge or means of information relating to the subject matter of the representation." *Iota Management Corp. v. Boulevard Inv. Co.*, 731 S.W.2d 399, 413 (Mo. App. E.D. 1987).

*Iota Management Corp.* involved the sale of a hotel. *Id*. at 403. The sales contract represented that the hotel would be sold "as is," but that the seller had no actual notice of any substantial defects in its structure or utility systems. *Id*. at 404. The buyer was entitled to an inspection period with the option to terminate the contract before closing if the hotel was determined to be in adverse condition. *Id*. The buyer's engineer inspected the hotel during the inspection period, but did not find any major defects. *Id*. at 404-05. After closing, the buyer discovered major defects in the hotel's heating and cooling system. *Id*. at 405-06. The buyer sued the seller, alleging a fraud count. *Id*. at 403. At trial, evidence was presented that the seller had actual notice of the heating and cooling system defects. *Id*. at 405-08.

17

The seller argued that the buyer had no right to rely on its representation in the sales contract that it had no actual notice of substantial defects because the buyer conducted its own independent investigation. *Id*. at 412-13. This Court disagreed, holding that the buyer had the right to rely on the seller's statement. *Id*. at 412-14. We reasoned that when a speaker makes distinct and specific representations, the hearer has the right to rely on the representations, even if the parties have equal knowledge or equal means of information relating to the subject matter. *Id*. at 413. Therefore, the buyer had the right to rely on the seller's statement, because the seller made specific representations about its notice of the heating and cooling system's condition. *Id*.

The circumstances are similar here. Appellants had letters informing them of their right to attend the settlement hearing, where they could learn the settlement amount and the respective percentages each beneficiary would receive. They therefore had the means to conduct the equivalent of an "independent investigation" into their entitlements under the settlement. However, Appellants have alleged and presented evidence by affidavit that Schiller and Highfill made distinct and specific representations that Appellants should not attend the hearing and that the settlement amount could not be disclosed. Therefore, as in *Iota Management Corp.*, Appellants had the right to rely on their sisters' representations, despite the fact that they could have found out the relevant information on their own.

### b. Other fraud elements

We examine next whether Appellants presented evidence to support a prima facie claim for fraud as to the other eight elements. Although the trial court did not address these elements in its decision, we will affirm a grant of summary judgment if it can be sustained on any theory as a matter of law. *Guy v. City of St. Louis*, 829 S.W.2d 66, 69 (Mo. App. E.D. 1992). "We will not reverse a correct result even where granted for the wrong reasons, and will sustain the trial

18

court's entry of summary judgment even if the theory on which we dispose of this case was not presented to the court." *Id*. Therefore, we must examine the other elements of fraud to ensure the trial court's judgment cannot be affirmed on other grounds.

As noted above, the elements of a claim for fraud are: (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or her ignorance of the truth, (5) the speaker's intent that the representation should be acted upon by the hearer in a manner reasonably contemplated, (6) the hearer's ignorance of the representation's falsity, (7) the hearer's reliance on the representation's truth, (8) the hearer's right to rely on the representation, and (9) injury to the hearer proximately caused by his reliance. *Professional Laundry Management Systems, Inc.*, 109 S.W.3d at 205. Direct evidence of fraud rarely exists, but it may be established by circumstantial evidence. *Hammett v. Atcheson*, 438 S.W.3d 452, 461 (Mo. App. W.D. 2014).

Appellants have presented evidence supporting every element. Each Appellant presents affidavit testimony that Schiller and Highfill falsely stated that Appellants should not attend the settlement hearing and that Schiller and Highfill could not disclose the settlement amount. These representations were material because they prevented Appellants from attending the hearing to assert their rights and from questioning the amounts they received. Appellants presented evidence of Schiller and Highfill's knowledge of the representations' falsity through Terry's deposition testimony, which states that the settlement amount was not confidential and that Schiller and Highfill told him Appellants were aware of the settlement percentages before the hearing. The affidavits also present evidence of Appellants' ignorance of the representations' falsity and their reliance on the representations. Appellants state they did not know Schiller and Highfill's alleged statements were untrue, but that they believed them to be true. Their right to

19

rely on the representations was established above. Finally, Appellants presented evidence that they suffered injury as a result of the representations – Schiller and Highfill each received two and one half times the settlement amount Appellants did.

Schiller and Highfill dispute all of this evidence, relying on their own deposition testimony and that of Peggy Andrews. But the factual disputes related to all of the elements of fraud may not be resolved as a matter of law. Because there exist unresolved issues of material fact and Appellants had the right to rely on Schiller and Highfill's alleged misrepresentations, the trial court erred in granting summary judgment in favor of Schiller and Highfill on Appellants' fraud count. Point four granted in part.

### 3. Conspiracy to defraud

Appellants' allegations in their conspiracy to commit fraud count are substantially the same as the fraud count, with the additional allegation that Schiller and Highfill conspired and agreed to commit the fraudulent acts.

A "civil conspiracy" is an agreement or understanding between two people to perform an unlawful act or to perform a lawful act through unlawful means. *State ex rel. Missouri Highways and Transp. Com'n v. Westgrove Corp.*, 364 S.W.3d 695, 702 (Mo. App. E.D. 2012). Here, Appellants alleged that Schiller and Highfill entered an agreement to defraud Appellants, but they have presented no evidence of the alleged agreement. There are no issues of material fact as to this count. The trial court's grant of summary judgment for the conspiracy to defraud count was not in error. Point four is denied in part.

### III.  CONCLUSION

The trial court's grant of summary judgment in favor of Terry on Appellants' breach of fiduciary duty and legal malpractice claims is affirmed. The trial court's grant of summary

20

judgment in favor of Schiller and Highfill on Appellants' negligence and conspiracy to defraud claims is affirmed. The trial court's grant of summary judgment in favor of Schiller and Highfill on Appellants' fraud claim is reversed and remanded for proceedings consistent with this opinion.

ROBERT M. CLAYTON III, Judge

Patricia L. Cohen, P.J., and
Roy L. Richter, J., concur.

21