Mary DONAHUE and Sundy
McClung, Appellants,

v.

SHUGHART, THOMSON & KILROY,
P.C., et al., Respondents.

No. 77714.

Supreme Court of Missouri,
En Banc.

June 20, 1995.

Gregg Lombardi, Arthur A. Benson, II, Kansas City, for appellants.

Spencer J. Brown, Daniel E. Hamann, Kansas City, for respondents.

Randy W. James, Overland Park, for amicus curiae Mo. Ass'n of Trial Attys.

HOLSTEIN, Judge.

Mary Donahue and Sundy McClung appeal a dismissal of their legal malpractice claim. In their petition they assert that because of the defendant attorneys' malpractice, an attempted testamentary transfer failed. Among other grounds for relief, they claim to have standing to bring this action even though they were not the clients of the attorneys involved. Following opinion by the Missouri Court of Appeals, Western District, this Court granted transfer. *Rule 83.03.* The order of dismissal is affirmed in part, reversed in part and the cause remanded.

■ In reviewing the sufficiency of the petition, this Court determines if the facts pleaded and inferences reasonably drawn therefrom state any ground for relief. *Martin v. City of Washington,* 848 S.W.2d 487, 489 (Mo. banc 1993). Facts averred are treated as true and are construed liberally in favor of the plaintiff. *Id.* This Court determines if such averments invoke principles of substantive law. *Hagely v. Bd. of Educ.,* 841 S.W.2d 663, 665 (Mo. banc 1992). The facts set forth below, extracted from the amended petition, are recited with these principles in mind.

## FACTS

Defendant J. Harlan Stamper is an attorney and shareholder of the defendant law firm Shughart, Thomson & Kilroy, P.C. (law firm). Gerald E. Stockton died in November 1988. For many years prior to his death, Mr. Stamper had been an attorney to Mr. Stockton. In 1979, Mr. Stockton established a living trust naming himself as trustee. The beneficiaries of the trust included persons other than Mary Donahue and Sundy McClung.

In May 1988, Stockton explained to Stamper that he was entering the hospital for surgery. He sent Stamper $150,000.00 in checks on the trust account made payable to Mary Donahue and Sundy McClung. Stamper was directed to see to it that Donahue and McClung received the proceeds of the checks on the trust account when Stockton died. Stockton also directed Stamper to prepare a deed to his home transferring a fifty percent interest in the home to Donahue, effective on Stockton's death. Donahue and McClung were the sole intended beneficiaries of these transfers.

In September 1988, Stockton gave Stamper another check drawn on the trust in the amount of $100,000.00 payable to "Mary Donahue, G.E. Stockton, J,T,W,R,O,S, [sic] J. Harlan Stamper, Trustee." Mr. Stamper understood that Stockton wanted Mary Donahue to receive the proceeds of this check upon his death. On October 26, 1988, Stamper was informed that Stockton's death was imminent. Stamper then sought advice from others in his law firm on how to make the checks and deed effective. He and other law firm attorneys attempted to take action to effectuate Stockton's wishes, including the recording of the deed. Stockton died November 5, 1988. The steps taken to effectuate the transfers were brought into question by declaratory judgment action, which resulted in an opinion by the Missouri court of appeals holding the transfers were invalid.[1]

---

1. The effect of that opinion is dubious. This Court is informed by footnote in the court of appeals opinion in this case that the trial court in the declaratory judgment action held the transfers were valid as gifts *causa mortis.* On appeal, the court of appeals published an opinion holding the transfers were not valid gifts *causa mortis.* However, before the mandate of the court of appeals issued, the declaratory judgment action was settled and the court of appeals withdrew its

The plaintiffs filed an amended petition asserting two theories of legal malpractice, one of breach of fiduciary duty and one of breach of contract as third party beneficiaries. The first legal malpractice theory is that Stamper and the law firm were acting as attorneys for Donahue and McClung and acted negligently in that representation. The second legal malpractice theory alleges that Stamper and the law firm violated their professional duties to Stockton and the trust. All counts of the amended petition were dismissed.

I.

The four elements of a legal malpractice action are: "(1) that an attorney-client relationship existed; (2) that defendant acted negligently or in breach of contract; (3) that such acts were the proximate cause of the plaintiffs' damages; (4) that but for defendant's conduct the plaintiffs would have been successful in prosecution of their [underlying] claim." *Boatright v. Shaw,* 804 S.W.2d 795, 796 (Mo.App.1990). In count I of their amended petition, plaintiffs allege that in late September or early October 1988, Donahue, on behalf of herself and McClung, then a minor, met with Stamper to seek legal advice regarding negotiation of the checks and recording of the deed. They further allege that while acting as their attorney, Stamper incorrectly advised them that there was no need to negotiate the checks at that time. The plaintiffs allege that at a subsequent meeting on October 27, 1988, Stamper and other attorneys with the law firm incorrectly advised them that if plaintiffs followed their instructions, the negotiation of the May checks, the second Donahue check, and the transfer of fifty percent interest in Stockton's home would all be effective and binding. It is further alleged that because Stamper and others with the law firm failed to perform

any research between the meeting in late September 1988 and October 26, 1988, the transfers were ineffective.[2]

Accepting the facts pleaded as true and giving those facts the benefit of all reasonable inferences, they state that plaintiffs had an attorney-client relationship with Stamper and the law firm at the time of the late September 1988 meeting, that Stamper and others in the law firm acted negligently, that Stamper's conduct was the proximate cause of the plaintiffs' damages and that but for such conduct, the transfers would have been valid. It is true that lawyers frequently make statements or express opinions to persons engaged in transactions with their clients without intending to assume a duty as attorney to such persons, and reliance alone upon the advice or conduct of a lawyer does not create an attorney-client relationship. Ronald E. Mallen and Jeffrey M. Smith, *Legal Malpractice* § 8.2, at 96 (3rd ed. Supp. 1993). Also, representation of Donahue in unrelated matters is insufficient to establish that Stamper represented her in regard to the Stockton transfers. *See Ginsberg v. Chastain,* 501 So.2d 27, 29 (Fla.Dist.Ct.App. 1986). Nevertheless, if Donahue and McClung are able to prove that they sought and received legal advice and assistance and that Stamper intended to undertake to give such advice and assistance on their behalf in the matter of the Stockton transfers, the attorney-client relationship might be found to exist. *See State v. Longo,* 789 S.W.2d 812, 815 (Mo.App.1990). For purposes of a motion to dismiss, the averment of an attorney-client relationship is sufficient.

II.

The more complicated question is whether the intended beneficiaries, in this

opinion. The appeal was dismissed. This leaves unsettled the question of how the plaintiffs intend to demonstrate that the transfers were invalid and that, therefore, Stamper's advice was improper. Perhaps the issue was addressed in the agreement settling the declaratory judgment action. Review here is limited to the sufficiency of the facts alleged in the petition. The effect of the disposition of the declaratory judgment appeal is not before us for consideration.

2. More allegations of negligence are recited in the petition, but only those supporting a cause of action are reiterated. Stamper and the law firm's conduct prior to Stamper's first meeting with Donahue regarding the transfers would not state a cause of action because no allegations are made indicating an attorney-client relationship existed regarding the transactions prior to the first meeting.

case, Donahue and McClung, have standing to bring a legal malpractice action against Stamper and the law firm because the lawyers failed to effectuate a transfer in accordance with the wishes of their client, Stockton. This theory is asserted in counts II, V, VIII, and XI. As previously noted, one required element of a legal malpractice action is that an attorney-client relationship existed between the plaintiff and defendant. *Rose v. Summers, Compton, Wells & Hamburg,* 887 S.W.2d 683, 686 (Mo.App.1994). Plaintiffs contend that, although they are not clients of defendants, they have met such requirement by pleading that they were the intended beneficiaries of the client's action and that such fact, accompanied by other recognized elements of a legal malpractice claim, suffice to establish the element of attorney-client relationship.

There are cases in Missouri indicating that circumstances may exist where an attorney will be held liable to third parties for the attorney's unprofessional conduct. For example, there are exceptional cases involving fraud, collusion, or malicious or tortious acts by the attorney that might justify liability to third parties. *Kennedy v. Kennedy,* 819 S.W.2d 406, 410 (Mo.App.1991); *Rose,* 887 S.W.2d at 686. But to date, no Missouri case has held that intended beneficiaries of a will have a cause of action against the attorney when the intended beneficiary is damaged as a result of attorney negligence. *Williams v. Bryan, Cave, McPheeters, McRoberts,* 774 S.W.2d 847, 849 (Mo.App.1989).

In comparable circumstances, this Court held that an indemnitor of a surety could sustain, in the absence of privity of contract, an action against an architect-defendant who allegedly failed to exercise ordinary care in certifying the amount of material furnished and labor performed. *Westerhold v. Carroll,* 419 S.W.2d 73, 76 (Mo.1967). The appellants here argue that the *Westerhold* reasoning should apply to legal malpractice actions.

In *Westerhold,* the Court applied a case-by-case balancing of factors test established by *Biakanja v. Irving,* 49 Cal.2d 647, 320 P.2d 16, 19 (bank 1958), to determine whether as a matter of policy a defendant would be held liable to a third person not in privity

under a surety contract. *Westerhold,* 419 S.W.2d at 81. Those factors are:

> [T]he extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to [the plaintiff], the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm.

*Id.* This Court concluded that all the factors were satisfied except the one involving "moral blame" and allowed the plaintiff to maintain the action.

Courts of other states have considered whether an attorney can be held liable for negligence to a person other than the client. Generally, the analysis begins with the historical rule requiring privity of contract to maintain an action for professional negligence. Ronald E. Mallen and Jeffrey M. Smith, *Legal Malpractice* § 7.4, at 364 (3rd ed.1993). However, "the vast majority of modern decisions have favored expanding privity beyond the confines of the attorney-client relationship where the plaintiff was intended to be *the* beneficiary of the lawyer's retention." *Id.,* § 7.10, at 379.

The balancing test cited in *Westerhold* was used by the California Supreme Court to determine whether non-client beneficiaries of a will could maintain a legal malpractice action. *Lucas v. Hamm,* 56 Cal.2d 583, 15 Cal.Rptr. 821, 364 P.2d 685 (bank 1961). There the court reiterated the *Biakanja* factors but eliminated, without explanation, the factor concerning "moral blame." Perhaps the rationale for excluding moral blame is that such factor is subsumed by the concept that a duty is owed from one whose conduct is culpable to one who is innocent but injured by such culpability. The *Lucas* court also added the factor of whether the expansion of liability would impose an undue burden on the legal profession. *Id.* at 824, 364 P.2d at 688. That balancing test has been cited with approval by most jurisdictions which have considered the issue. Mallen and Smith, *supra,* § 7.11, at 383.

The second theory commonly used to establish liability to those not in strict privity with the defendant-attorney is based on the concept of a third party beneficiary contract. *See* Mallen and Smith, *supra, § 7.11*, at 382, and *Flaherty v. Weinberg*, 303 Md. 116, 492 A.2d 618, 621 (1985). Under that approach, the inquiry is whether the intent of the client to benefit the non-client was the direct purpose of the attorney-client transaction or relationship. *Flaherty*, 492 A.2d at 625. The third party beneficiary approach focuses the existence of a duty entirely on whether the plaintiff was the person intended to be benefitted by the legal services and does not extend to those incidentally deriving an indirect benefit. Neither does it extend to those in an adversarial relationship with the client. *See Flaherty* at 625–26. Under this theory, it is difficult to conceive of a situation where the lawyer will be held liable for a failed gift or testamentary transfer while the client is still living and competent. Commentators have suggested that even in those jurisdictions which have followed the balancing approach of *Lucas*, the predominant inquiry has generally involved the criterion of whether the principal purpose of the attorney's retention to provide legal services was for the specific benefit of the plaintiff. Mallen and Smith, *supra, § 7.11* at 384; *see Flaherty*, 492 A.2d at 625, n. 6.

The two most common approaches do not appear to be irreconcilable. The first factor of the balancing test addresses the extent to which the transaction was intended to benefit the plaintiff and bears a remarkable resemblance to the third party beneficiary theory. The question of whether the client had a specific intent to benefit the plaintiff plays an important role in determining if a legal duty exists under the balancing of factors test. The first factor identified in *Westerhold* and *Lucas* should be modified to reflect that the factor weighs in favor of a legal duty by an attorney where the client **specifically intended** to benefit the plaintiffs. With that modification, that approach is an appropriate method for determining an attorney's duty to non-clients. The weighing of factors allows consideration of relevant policy concerns and is consistent with prior case law, as expressed in *Westerhold*. Concurrently, the ultimate factual issue that must be pleaded and proved is that an attorney-client relationship existed in which the client specifically intended to benefit the plaintiff.

The primary arguments against allowing a non-client to bring a legal malpractice action are the possibility that liability will extend to an unlimited class of individuals and will interfere with the attorney-client relationship. These concerns are addressed by proper application of the modified balancing of factors approach. If the transaction was specifically intended to benefit the plaintiff, liability is not extended to an unlimited class and it does not interfere with the attorney-client relationship, particularly where the client is deceased or incompetent. A benefit that is merely incidental or indirect will not satisfy this factor. Neither will a benefit to one in an adversarial relationship to the client be sufficient to satisfy the factor. Within the bounds of the law, the attorney's duty is solely to advance the client's interest. Further, recognizing liability to an intended beneficiary of a testamentary transfer does not unduly burden the legal profession when liability is limited to those the client intended but is no longer able to benefit and where no other remedy exists to prevent harm to the beneficiaries. *See Williams*, 774 S.W.2d at 848–49. Additionally, extending liability under such circumstances is necessary to prevent future harm because no individual is likely to bring the action if the intended beneficiaries are not allowed to do so. The testator's estate will have little incentive to challenge the action and, therefore, the potential for liability to intended beneficiaries is likely to encourage attorneys to exercise care in drafting and executing testamentary instruments. *See, e.g., Schreiner v. Scoville*, 410 N.W.2d 679, 682 (Iowa 1987), and *Pizel v. Zuspann*, 247 Kan. 54, 795 P.2d 42, 49–50 (1990).

■ To summarize, the Court concludes that the first element of a legal malpractice action may be satisfied by establishing as a matter of fact either that an attorney-client relationship exists between the plaintiff and defendant or an attorney-client relationship existed in which the attorney-defendant performed services specifically intended by the

client to benefit plaintiffs. As a separate matter, the question of legal duty of attorneys to non-clients will be determined by weighing the factors in the modified balancing test. The factors are:

(1) the existence of a specific intent by the client that the purpose of the attorney's services were to benefit the plaintiffs.

(2) the foreseeability of the harm to the plaintiffs as a result of the attorney's negligence.

(3) the degree of certainty that the plaintiffs will suffer injury from attorney misconduct.

(4) the closeness of the connection between the attorney's conduct and the injury.

(5) the policy of preventing future harm.

(6) the burden on the profession of recognizing liability under the circumstances.

■ Applying these six factors here, the pleadings state that Stockton's primary purpose in writing the checks and preparing and signing the deed was to benefit the plaintiffs and, aside from Stockton's desire that his property be distributed according to his directions after his death, no benefit to him is apparent. It is clear that plaintiffs cannot be characterized as incidental or indirect beneficiaries. Negligent advice or preparation of testamentary documents was almost certain to cause plaintiffs injury. The conduct of Stamper and the law firm was directly connected to the injury. Future harm may only be prevented by allowing intended beneficiaries of failed testamentary transfers some avenue of recovery in malpractice claims, particularly where the estate has interests inconsistent with those of the intended beneficiaries. The legal profession will not be unduly burdened by being required to act competently toward identifiable persons that a client specifically intends to benefit when such persons have no other viable remedy and where such persons are not in an adversarial relationship to the client. The Court concludes that the facts as pleaded here are sufficient to assert a breach of a legal duty and to state a cause of action in a lawyer malpractice action.

### III.

■ The plaintiffs also argue that they have pleaded a claim as for breach of a third party beneficiary contract. While one element of one of their malpractice claims requires a showing that Stockton intended to benefit plaintiffs, a careful reading of the pleadings discloses that liability hinges not on contract but on an attorney's alleged negligence toward a client. The duty allegedly breached was not the violation of the contract to deliver the checks and deed as per the directions of Stockton, but that Stamper was negligent in performing professional obligations to Stockton. Plaintiffs' third party beneficiary claim is merely one of attorney malpractice, clothed in a contract theory. For that reason, the counts alleging breach of a third party beneficiary contract were properly dismissed.

### IV.

■ Similarly, the counts based upon breach of fiduciary relationship were properly dismissed. The fiduciary relationship, if one existed, arose out of the attorney-client relationship. The specific breach is dependent on the existence of attorney negligence, not on the breach of a trust.

Plaintiffs cite cases stating that the attorney-client relationship is a fiduciary relationship. *See, e.g., In re Oliver*, 365 Mo. 656, 285 S.W.2d 648, 655 (banc 1956). They also cite marginally relevant support for the proposition that a claim for a breach of an attorney's fiduciary duty passes to them upon the client's death. In *Walton v. Van Camp*, 283 S.W.2d 493 (Mo.1955), this Court found that upon a client's death, the heirs contesting the client's grant of a deed could waive the attorney-client privilege as to communications between decedent and his attorney. The attorney was allowed to testify regarding conversations with his client. *Id.* at 499. That case did not hold that a claim for breach of fiduciary duty may be maintained, upon the death of someone who is owed such a duty, by parties who allege some loss of benefit as a result of that breach. Moreover, any breach by Stamper and the law firm of a fiduciary duty to Stockton is, as noted above, a result of the defendant attorneys' negligent

performance of professional services. That alleged breach is no more than a claim for attorney malpractice, and must be treated as such. Here it is not alleged that Stamper failed to follow Stockton's directions under a trust. Rather, it is alleged that Stamper and the law firm negligently failed to draft documents and advise Stockton in order to properly effectuate the intended transfers.

### CONCLUSION

The judgment dismissing the amended petition is affirmed as to all counts except as to counts I, II, V, VIII, and XI. The judgment dismissing counts I, II, V, VIII and XI is reversed and the cause is remanded to the trial court for further proceedings consistent with this opinion.

COVINGTON, C.J., and BENTON, LIMBAUGH and ROBERTSON, JJ., concur.

THOMAS, J., not participating.

PRICE, J., not sitting.