

# In the
# Missouri Court of Appeals
# Western District

WANDA L. ALBERTS, ET AL.,

                  Appellants,

v.

TURNBULL CONWAY, P.C. (F/K/A
TURNBULL & STARK, P.C.) AND
STEPHEN CHRISTOPHER CONWAY,

                  Respondents.

**WD84235**

**OPINION FILED:**
**January 4, 2022**

Appeal from the Circuit Court of Cole County, Missouri
The Honorable Patricia S. Joyce, Judge

Before Special Division:
Thomas N. Chapman, P.J., Edward R. Ardini, Jr., J., and Terry A. Tschannen, Sp. J.

Wanda Alberts, Richard Alberts, Delores Shirley, Brent Shirley, Richard Griggs, Ronda Griggs, Robin Stone, Roxanne Wilson, and Leslie O'Rourke (collectively "Plaintiffs") appeal the Cole County Circuit Court's dismissal of their legal malpractice claim against Turnbull Conway, P.C. and Stephen Conway (collectively "Defendants") for failure to state a claim upon which relief can be granted. In their petition, Plaintiffs alleged that Defendants negligently failed to timely draft and secure execution of amendments to Howard L. Walz's ("Walz") existing trust to provide specific distributions to Plaintiffs prior to Walz's death. In their sole point on appeal,

Plaintiffs contend that the trial court erred in dismissing their petition because the facts in their petition sufficiently stated causes of action for legal malpractice. The judgment is affirmed.

## Factual and Procedural Background[1]

In June 2018, Walz engaged Stephen Conway, a Missouri lawyer and employee of Turnbull Conway, P.C., to provide estate planning services to accomplish and effect changes to Walz's estate plan and existing estate planning documents. Specifically, Walz instructed Defendants to draft amendments to Walz's existing trust agreement to provide for specific distributions to Plaintiffs, and Defendants agreed to do so.

After Walz hired Defendants, but before Defendants accomplished the amendments to Walz's trust agreement as instructed, Walz's health deteriorated, and he was hospitalized on more than one occasion. Defendants were advised of Walz's hospitalizations and of the importance of promptly attending to Walz's estate planning instructions, including the drafting of the amendments of his trust to include specific distributions to Plaintiffs.

Walz died on September 11, 2018. His trust agreement was not amended before his death.

On January 23, 2020, Plaintiffs filed their petition against Defendants for legal malpractice. They alleged Defendants were negligent in one or more of the following respects:

   a. failing to act with reasonable diligence and promptness in performing the services they agreed to perform on behalf of Walz;

   b. failing to timely draft amendments to the Walz trust agreement;

   c. failing to timely secure execution of amendments to the Walz trust;

---

[1] The facts set forth below, taken from Plaintiffs' petition, are treated as true and are liberally construed in favor of the plaintiffs. *Lynch v. Lynch*, 260 S.W.3d 834, 836 (Mo. banc 2008).

d. failing to effectuate the amendments to the Walz trust providing and resulting in specific distributions to Plaintiffs;

e. failing to timely refer Walz to other counsel to draft amendments to the Walz trust and/or effectuate the amendments to the Walz trust.

Plaintiffs alleged that, as a direct and proximate result of Defendants' negligence, Walz's trust was not amended and Plaintiffs did not receive the specific distributions from the trust estate as intended by Walz and were damaged as a result. Plaintiffs further asserted that they were the intended beneficiaries of the amendments to Walz's trust agreement that Defendants were hired and instructed to effectuate and that if Defendants failed to effectuate the trust amendments, it was foreseeable and certain that they would be damaged. They also asserted that they had standing to bring the claims under *Donahue v. Shughart, Thomson & Kilroy, P.C.*, 900 S.W.2d 624 (Mo. banc 1995).

On February 26, 2020, Defendants filed a motion to dismiss Plaintiffs' petition for failure to state a claim upon which relief can be granted. They argued that Missouri law did not recognize a cause of action for legal malpractice by non-clients who claimed they would have been named beneficiaries if an estate or trust document had been executed.

Following a hearing on the motion, the trial court entered its judgment dismissing Plaintiffs' petition for failure to state a claim on December 21, 2020. This appeal by Plaintiffs followed.

**Standard of Review**

"The standard of review for a trial court's grant of a motion to dismiss is *de novo*." *Lynch v. Lynch*, 260 S.W.3d 834, 836 (Mo. banc 2008). In reviewing the dismissal of a petition for failure to state a claim, the facts contained in the petition are treated as true and are liberally construed in favor of the plaintiffs. *Id.* A "petition states a cause of action if its averments

3

invoke principles of substantive law that may entitle the plaintiff to relief." *Id.* (internal quotes and citation omitted). The appellate court must affirm a dismissal if it can be sustained on any ground which is supported by the motion to dismiss, regardless of whether the trial court relied on that ground. *Meyer v. Carson and Coil*, 614 S.W.3d 618, 625 (Mo. App. W.D. 2020). Defendants moved to dismiss Plaintiffs' petition on the sole ground that Plaintiffs were non-clients who did not fall within the privity exception in *Donahue*.

**Analysis**

In their sole point on appeal, Plaintiffs contend that the trial court erred in granting Defendants' motion to dismiss because the facts in their petition sufficiently stated a cause of action for legal malpractice under the principles of *Donahue*. Specifically, they argue that they alleged an attorney-client relationship existed in which Defendants agreed to perform services specifically intended by Walz to benefit Plaintiffs resulting in an actionable legal duty owed to Plaintiffs.

The four elements of legal malpractice are: (1) an attorney-client relationship; (2) negligence or breach of contract by the defendant; (3) proximate causation of the plaintiff's damages; and (4) damages to the plaintiff. *Meyer*, 614 S.W.3d at 625. At issue in this case is the first element. The existence of an attorney-client relationship between the plaintiff and the attorney is an essential element because the duty to exercise reasonable care in the attorney's practice of the profession arises from that relationship. *Id.* "The attorney, with limited exceptions, owes no actionable duty to strangers or non-parties to the attorney-client relationship in the way legal responsibilities are performed." *Id.* (internal quotes and citation omitted).

In *Donahue*, the Missouri Supreme Court created an exception to the traditional rule requiring privity in the form of the existence of an attorney-client relationship, and allowed non-

client, intended beneficiaries of executed (but failed) testamentary transfers to sue the donor's attorney for legal malpractice. 900 S.W.2d 628-29; *Meyer*, 614 S.W.3d at 625; *Johnson v. Sandler, Balkin, Hellman, & Weinstein, P.C.*, 958 S.W.2d 42, 48 (Mo. App. W.D. 1997). In *Donahue*, Gerald Stockton sent his attorney checks drawn on his living trust payable to Mary Donahue and Sundy McClung, who were not beneficiaries under the trust, and directed the attorney to ensure that Donahue and McClung received the proceeds of the checks when Stockton died. 900 S.W.2d at 625. In addition, Stockton directed his attorney to prepare a deed, which Stockton executed, transferring a fifty-percent interest in his home to Donahue, effective on Stockton's death. *Id.* Stockton subsequently gave his attorney another check drawn on the trust payable to Donahue upon his death. *Id.* After Stockton's death, the testamentary transfers were challenged in a declaratory judgment action and found invalid. *Id.* Donahue and McClung sued the attorney and his law firm for legal malpractice. *Id.* at 626.

The Missouri Supreme Court recognized that allowing a non-client to bring a legal malpractice action against an attorney could interfere with the attorney-client relationship. *Id.* at 628; *Johnson*, 958 S.W.2d at 48. To address the concern, it fashioned a two-part analysis to determine whether a duty could be imposed on attorneys to non-clients. First, it must be determined whether, "as a matter of fact, …an attorney-client relationship existed in which the attorney-defendant performed services specifically intended by the client to benefit [non-client] plaintiffs." *Donahue*, 900 S.W.2d at 628-29. Second, *Donahue* indicated that "as a separate matter, the question of [whether a] legal duty of attorneys to non-clients will be determined by weighing" the client's specific interest in benefiting the non-client against various other factors that might weigh against imposing a duty. *Id.* at 629. *Donahue* listed the factors considered in imposing a duty to the non-client, as follows:

5

(1) the existence of a specific intent by the client that the purpose of the attorney's services were [sic] to benefit the plaintiffs.

(2) the foreseeability of the harm to the plaintiffs as a result of the attorney's negligence.

(3) the degree of certainty that the plaintiffs will suffer injury from attorney misconduct.

(4) the closeness of the connection between the attorney's conduct and the injury.

(5) the policy of preventing future harm.

(6) the burden on the profession of recognizing liability under the circumstances.

*Id.*

The *Donahue* court applied the six factors and found, as a matter of law, that they weighed in favor of imposing a legal duty on attorneys to the non-client beneficiaries of Stockton's executed (but failed) testamentary transfers. *Id.*; *Johnson*, 958 S.W.2d at 49. It explained:

> Applying these six factors here, the pleadings state that Stockton's primary purpose in writing the checks and preparing and signing the deed was to benefit the plaintiffs and, aside from Stockton's desire that his property be distributed according to his directions after his death, no benefit to him is apparent. It is clear that plaintiffs cannot be characterized as incidental or indirect beneficiaries. Negligent advice or preparation of testamentary documents was almost certain to cause plaintiffs injury. The conduct of [the attorney] and the law firm was directly connected to the injury. Future harm may only be prevented by allowing intended beneficiaries of failed testamentary transfers some avenue of recovery in malpractice claims, particularly where the estate has interests inconsistent with those of the intended beneficiaries. The legal profession will not be unduly burdened by being required to act competently toward identifiable persons that a client specifically intends to benefit when such persons have no other viable remedy and where such persons are not in an adversarial relationship to the client. The Court concludes that the facts as pleaded here are sufficient to assert a breach of a legal duty and to state a cause of action in a lawyer malpractice action.

*Donahue*, 900 S.W.2d at 629.

This court decided *Johnson v. Sandler, Balkin, Hellman, & Weinstein, P.C.*, 958 S.W.2d 42, 48 (Mo. App. W.D. 1997), two years later. In *Johnson*, Harry Adreme's attorney drafted, and

6

Adreme executed, trust amendments that left half of his trust to his daughters, Gail Johnson and Sandra Butler, and his granddaughter, Lori Baca, and the other half held in a qualified terminable interest property ("QTIP") trust with the income payable to his (second) wife during her life, and the remainder passing to Johnson, Butler, and Baca. *Id.* at 45. After Adreme's death, his wife elected to take her spousal share against the trust, thus depriving Johnson, Butler, and Baca of the QTIP trust remainder and defeating Adreme's expressed intent to benefit them as residual beneficiaries. *Id.* at 45-46. Johnson, Butler, and Baca sued the attorney and his law firm for legal malpractice. *Id.* at 46.

Following *Donahue,* in *Johnson*, this court reversed the trial court's summary judgment in favor of the attorney and law firm, finding that the evidence created a genuine issue of material fact as to whether Adreme intended the services performed by the attorney and law firm to benefit plaintiffs Johnson, Butler, and Baca so that the attorneys owed a duty to the non-client plaintiffs. *Id.* at 52. In analyzing whether the services the attorney and the law firm performed on Adreme's behalf were intended by him to benefit Johnson, Butler, and Baca, the *Johnson* court found that the non-client plaintiffs were specifically-named beneficiaries of the executed trust amendments, including the QTIP trust, which the attorney and the law firm prepared. *Id.* at 50. It explained that to satisfy *Donahue*'s first requirement (that the attorney had been retained to benefit the non-client beneficiaries) it is not necessary that the client advise the attorney drafting the testamentary document that he or she "intends to benefit" the beneficiaries. *Id.* It reasoned that because "[t]he main purpose of retaining an attorney to prepare a testamentary trust is to ensure the future transfer of the settlor's estate to the [named] beneficiaries designated by the settlor[,]…an intent to benefit is inherent in designating persons as beneficiaries of a trust or will." *Id.* In short, *Johnson* determined that there need not be direct statements from the client

7

in order to infer his intent to retain an attorney to benefit named beneficiaries, as that intent could be inferred from their inclusion as beneficiaries in the executed documents. *Id.* In *Johnson*, the intent to benefit the non-clients hinged upon Johnson's execution of the testamentary instrument that included them as beneficiaries. *Id.*

*Donahue* and *Johnson* allowed beneficiaries specifically identified in executed (but failed) testamentary instruments to bring legal malpractice claims. *Donahue* referred to "failed testamentary transfers" and "[n]egligent advice or preparation of testamentary documents" in analyzing the six factors regarding legal duty of attorneys to non-clients. *Donahue*, 900 S.W.2d at 629. The *Donahue* court noted that the decedent's intended purpose could be discerned "in [his] *writing* the checks and preparing and *signing* the deed." *Id.* (emphasis added). Similarly, in *Johnson,* our court found a legal duty owed by an attorney to non-client beneficiaries of "failed wills or trusts" and, specifically, that the decedent's intent to benefit the non-client beneficiaries could be inferred from decedent's "designation of appellants as residual beneficiaries of the [executed] QTIP trust." *Johnson*, 958 S.W.2d at 49, 52.

Under *Donahue* and *Johnson*, the intended beneficiaries, as evidenced by the executed testamentary documents, were permitted to bring actions for legal malpractice against the attorneys based on allegations that the attorney's negligence caused the testamentary transfers or instruments to fail and caused the beneficiaries to lose the intended bequest. *Donahue*, 900 S.W.2d at 629; *Johnson*, 958 S.W.2d at 52. In both cases, the decedent's intent to benefit the non-client plaintiffs was reflected by their execution of documents that included them as intended beneficiaries of the testamentary documents. *Donahue* went on to weigh that manifested intention against various other factors in order to determine whether the non-client

8

beneficiaries named in the executed testamentary document were owed a duty of care by (and could thus bring a malpractice claim against) the attorney that prepared the executed documents.

Both *Johnson* and *Donahue* involved allegations that a decedent executed documents that intended to benefit plaintiffs, but, due to the negligence of decedent's counsel, those intended transfers failed. At issue in both of those cases was 1) whether the decedent intended to benefit plaintiffs at the time the testamentary documents were executed and 2) did those efforts fail due to the negligence of the attorney. The instant case, however, does not involve a failed (but executed) testamentary instrument, in which Plaintiffs were intended beneficiaries. Rather, Plaintiffs allege that Defendants were negligent in failing to timely draft and secure execution of amendments to Walz's trust to include specific distributions to Plaintiffs. Where the relevant testamentary documents are never executed (like this case), issues related to the testator's intent are far more tenuous than where (as in *Donahue* and *Johnson*) the testator's intent has been manifested in an executed document. Indeed, the testator's desires when engaging the services of the attorney may well change prior to executing the testamentary document. As *Donahue* and *Johnson* teaches us, it is testator's intent at the time of executing the failed testamentary documents that is relevant, not at some prior point in time.

Plaintiffs ask this court to extend the exception to the general rule requiring privity, to impose on attorneys a duty to prospective beneficiaries of undrafted, unexecuted testamentary documents.[2] Plaintiffs, however, do not direct us to any cases imposing such a duty in this state

---

[2] It is also worth noting that, in this matter, Walz had manifested through execution of the previous trust instruments, a certain disposition of his assets upon his death; and that Plaintiffs allege that Defendants were engaged to prepare documents to change that disposition in their favor. Plaintiffs propose that a duty should be imposed upon Defendants, based upon the assumption (which is necessarily speculative) that Walz would have ultimately executed such trust amendments in their favor—an assumption that is contrary to his manifested intention to dispose of his assets as set forth in the existing and executed trust instruments.

or any other jurisdiction, and we have independently found none. Because the lack of an executed testamentary document introduces rampant speculation into the analysis, we decline Plaintiffs' request to extend the exception and find persuasive the reasoning of courts in several jurisdictions that have similarly declined to impose a duty of care to prospective beneficiaries where the alleged negligence concerns the failure to promptly draft and secure execution of testamentary documents. *See Strong v. Fitzpatrick*, 169 A.3d 783 (Vt. 2017); *Rydde v. Morris*, 675 S.E.2d 431 (S.C. 2009); *Sisson v. Jankowski*, 809 A.2d 1265 (N.H. 2002); *Miller v. Mooney*, 725 N.E.2d 545 (Mass. 2000); *Krawczyk v. Stingle*, 543 A.2d 733 (Conn. 1988); *Parks v. Fink*, 293 P.3d 1275 (Wash. Ct. App. 2013); *Babcock v. Malone*, 760 So.2d 1056 (Fla. Dist. Ct. App. 2000); *Radovich v. Locke-Paddon*, 41 Cal.Rptr.2d 573 (Cal. Ct. App. 1995). Those courts have reasoned that "imposing on attorneys a duty to prospective beneficiaries of undrafted, unexecuted wills would undermine the duty of loyalty that an attorney owes to his or her client and invite claims premised on speculation regarding the testator's intent." *Strong*, 169 A.3d at 789.

Imposing a duty to prospective beneficiaries of undrafted, unexecuted testamentary instruments would not comport with an attorney's duty of undivided loyalty to the client and would create a potential conflict of interest to the testator and the prospective beneficiaries. In *Krawczyk*, the Connecticut Supreme Court explained,

> A central dimension of the attorney-client relationship is the attorney's duty of entire devotion to the interest of the client. This obligation would be undermined were an attorney to be held liable to third parties if, due to the attorney's delay, the testator did not have an opportunity to execute estate planning documents prior to death. Imposition of liability would create an incentive for an attorney to exert pressure on a client to complete and execute estate planning documents summarily. Fear of liability to potential third party beneficiaries would contravene the attorney's primary responsibility to ensure that the proposed estate plan effectuates the client's wishes and that the client understands the available

10

options and the legal and practical implications of whatever course of action is ultimately chosen. These potential conflicts of interest are especially significant in the context of the final disposition of a client's estate, where the testator's testamentary capacity and the absence of undue influence are often central issues.

*Krawczyk*, 543 A.2d at 736 (internal quotes and citations omitted).

Additionally, imposing a duty to *prospective* beneficiaries of undrafted, unexecuted testamentary instruments would invite claims premised on improper speculation regarding the testator's intent. *Strong*, 169 A.3d at 789. As the Vermont Supreme Court explained in *Strong*, "This risk is particularly high in the estate-planning context because the primary witness who could speak to testamentary intent is deceased when a claim is made." *Id.* In the absence of an executed testamentary document manifesting the testator's intent, "the risk of misinterpreting the testator's intent increases dramatically" and "the tendency to manufacture false evidence that cannot be rebutted due to the unavailability of the testator" is heightened. *Babcock*, 760 So.2d at 1057 (internal quotes and citation omitted). "Moreover, even if a testator had made note of his or her intent through declarations to relatives, friends, neighbors and the like…that intent may change over time during the estate-planning process." *Strong*, 169 A.3d at 789. "[C]ommon experience teaches that potential testators may change their minds more than once after the first meeting [with their attorney]." *Radovich*, 41 Cal.Rptr.2d at 582. The Massachusetts Supreme Judicial Court recognized:

> A client who engages an attorney to prepare a will may seem set on a particular plan for the distribution of her estate….It is not uncommon, however, for a client to have a change of heart after reviewing a draft will. Confronting a last will and testament can produce complex psychological demands on a client that may require considerable periods of reflection. An attorney frequently prepares multiple drafts of a will before the client is reconciled to the result. The most simple distributive provisions may be the most difficult for the client to accept. Considerable patience and compassion can be required of attorneys drafting wills, especially where the client seeks guidance through very private and sensitive matters. If a duty arose as to every prospective beneficiary mentioned by the

11

client, the attorney-client relationship would become unduly burdened. Attorneys could find themselves in a quandary whenever the client had a change of mind, and the results would hasten to absurdity.

*Miller*, 725 N.E.2d at 550-51.

Plaintiffs have alleged, and in reviewing the grant of the Defendants' motion to dismiss we therefore accept as true, that, *at the time Walz engaged Defendants,* he requested that they prepare instruments that would have benefited Plaintiffs upon his death. However, as we have previously indicated, both *Donahue* and *Johnson* addressed the intent of the testator *at the time of execution of the testamentary instrument*. Because we cannot know what Walz's specific intent would have been upon execution of any such instruments (or whether he would have even executed such instruments), and because such prospective intent is necessarily speculative, Plaintiffs' claim fails the first step of the *Donahue* analysis.

Even if we were to allow that "engaging" the attorney to prepare trust amendments intended to benefit non-clients (as alleged by Plaintiffs) would, by itself, satisfy the first part of the *Donahue* analysis (which we do not), in weighing that alleged intent (also the first factor considered in the second part of the *Donahue* analysis) against the remaining factors enumerated in *Donahue*, we do not find that a legal duty should be imposed upon attorneys (Defendants) to *prospective* beneficiaries for failure to prepare testamentary instruments that *might have been executed* had they been timely prepared.

The second and third factors considered in *Donahue* (foreseeability of harm to the plaintiffs and the degree of certainty that the non-client will suffer injury from attorney misconduct) weigh against imposing a duty to the non-client prospective beneficiary of unexecuted testamentary instruments. When it is unknown whether, had the documents been timely prepared, the client (Walz) would have executed them at all, or in the form as anticipated,

12

it is far less clear whether the non-client Plaintiffs suffered any injury due to Defendants' failure to timely prepare the trust amendments.

The closeness of the connection between the attorney's conduct (the delay in preparing the trust amendments) and the injury (the fourth factor in *Donahue*) is likewise attenuated, because we simply cannot know whether Walz would have actually executed the trust instruments in the form anticipated by Plaintiffs.

*Donahue's* fifth factor (the policy of preventing future harm) requires us to consider what harms might be prevented by imposing a duty to non-client prospective beneficiaries to timely (and correctly) prepare testamentary instruments, and conversely, to consider the future harm that might go unchecked (generally) if we fail to impose a duty to non-client prospective beneficiaries in these circumstances. While one would hope that reputational harm and the enforcement of the rules of professional conduct might serve as some incentive to attorneys to timely and diligently pursue the preparation of such instruments, imposition of liability to non-clients for failing to do so would certainly be another powerful incentive to encourage attorneys to timely prepare documents under such circumstances.

However, we cannot consider the fifth factor, without also addressing the sixth factor discussed in *Donahue* – the burden on the profession imposed by recognizing liability under these circumstances. Imposing a duty to prospective beneficiaries of undrafted, unexecuted testamentary instruments would not comport with an attorney's duty of undivided loyalty to the client and would create a potential conflict of interest to the testator and the prospective beneficiaries. As stated in *Krawczyk*, "[t]hese potential conflicts of interest are especially significant in the context of the final disposition of a client's estate, where the testator's testamentary capacity and the absence of undue influence are often central issues." *Krawczyk*,

13

543 A.2d at 736 (internal quotes and citations omitted). In *Sisson*, the New Hampshire Supreme Court reasoned,

> [T]he potential for conflict between the interests of a prospective beneficiary and a testator militates against recognizing a duty of care….Whereas a testator and the beneficiary of a will have a mutual interest in ensuring that an attorney drafts the will non-negligently, a prospective beneficiary may be interested in the will's prompt execution, while the testator or testatrix may be interested in having sufficient time to consider and understand his or her estate planning options.

*Sisson*, 809 A.2d at 1269. "The imposition of a duty on an attorney to a prospective beneficiary of a nonexistent will would wreak havoc on the attorney's ethical duty of undivided loyalty to the client and force an impermissible wedge in the attorney-client relationship." *Rydde*, 675 S.E.2d at 435.

In this matter, imposing a duty before execution of the instruments to non-client *prospective* beneficiaries (such as Plaintiffs) to timely prepare testamentary instruments would interfere with (or at the very least compete with) the estate planning attorney's duty of undivided loyalty to the client to see that the client has adequate time to reflect on what he desires, including the opportunity to change his mind and/or execute a plan that is not what the non-client prospective beneficiary desires. *See Strong*, 169 A.3d at 789. Unlike this case, *Donahue* and *Johnson* did not involve unexecuted testamentary instruments; did not therefore address whether to impose a duty of care, *ex ante*, to prospective non-client beneficiaries of unexecuted instruments; and did not thus divide (or dilute) the estate planning attorney's duty of undivided loyalty to his client in the preparation and execution of the testamentary instruments.

For all of the reasons stated, we decline to extend the *Donahue* exception to the traditional privity requirement to permit a malpractice claim by a non-client prospective

beneficiary for negligent failure to draft and secure execution of a testamentary document.[3]  In this case, absent an executed testamentary document, Plaintiffs were, at most, prospective beneficiaries.  Defendants did not owe a duty of care to Plaintiffs regarding the proposed amendments to Walz's trust.  As a matter of law, Plaintiffs failed to allege facts that would establish that Defendants owed them a duty of care, an essential element for their legal malpractice claim.  The trial court, therefore, did not err in granting Defendants' motion to dismiss.  The point is denied.

## Conclusion

The judgment is affirmed.

_____
Thomas N. Chapman, Presiding Judge

All concur.

---

[3] We recognize that different considerations may arise when it is alleged that an attorney negligently advised a client that it was unnecessary to execute testamentary instruments, or that it was unnecessary to amend existing testamentary instruments, to achieve the client's testamentary intent.