

# In the Missouri Court of Appeals
# Eastern District

### DIVISION ONE

| | | |
|---|---|---|
| LARA AND BRIAN FALLON, | ) | No. ED111682 |
| | ) | |
| Appellants, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| v. | ) | 20SL-CC05990 |
| | ) | |
| MARK EASLEY, | ) | Honorable Brian H. May |
| | ) | |
| Respondent. | ) | Filed: March 5, 2024 |

### Introduction

Appellants Lara and Brian Fallon appeal from the judgment and order of the trial court granting summary judgment against them and in favor of Respondent Mark Easley regarding Respondent's alleged legal malpractice in failing to timely draft and secure execution of an amendment to Appellants' mother's trust. We affirm the judgment of the trial court.

### Factual and Procedural Background

#### Facts

A.F. ("Decedent") and her husband had four living children: L.B., M.F., and Appellants Brian and Lara Fallon.[1] Decedent listed these four children as beneficiaries in her Revocable

---

[1] The personal identifying information of witnesses has been omitted pursuant to RSMo § 509.520 (Supp. 2023).

Living Trust initially executed on June 20, 2000. On August 15, 2002, Decedent executed a First Amendment to the trust.

In June 2016, Decedent's husband passed away. Decedent and her four children, L.B., M.F., and Appellants, survived Decedent's husband. Following her husband's death, Decedent retained Respondent to prepare a Second Amendment to the Revocable Living Trust. Under the Second Amendment, M.F. would receive a $10,000 distribution. The three other children, L.B. and Appellants, each would receive "an equal share of the remaining assets with each child's equal share distributed to that child's living descendants should said child predecease Decedent."

After the execution of the Second Amendment, L.B. passed away leaving L.B.'s twin daughters as recipients of L.B.'s share of the trust distribution. In response to L.B.'s death, Decedent, as alleged by Appellants, wanted to remove L.B. and her descendants from the trust to avoid distributing money to some grandchildren but not others. Under the proposed change, Appellants would evenly split L.B.'s one-third share. Respondent never met or spoke directly with Decedent to ascertain her intentions and her mental capacity to make decisions related to amending the Revocable Living Trust.

On February 25, 2019, Decedent passed away without having executed any amendment to the Second Amended Revocable Living Trust. Thus, an amendment naming Appellants as beneficiaries of the one-third interest of their deceased sibling, L.B., was never executed.

Procedural History

On December 10, 2020, Appellants filed a petition for legal malpractice alleging Respondent "failed to exercise that degree of skill, care and learning ordinarily exercise[d] by members of the legal profession involve[d] in probate and estate planning in the following respects, to wit: (a) Defendant EASLEY failed to visit and consult with [Decedent]; and (b) Defendant

2

EASLEY failed to timely prepare a third amendment to the Irrevocable Trust and have it executed in a timely fashion." The petition further alleged that, but for Respondent's negligence, Appellants each would have received one-half of L.B.'s one-third share of the trust. Finally, the petition alleged that Respondent's actions directly and proximately damaged Appellants.

Respondent filed a motion for summary judgment, memorandum in support, and statement of uncontroverted material facts with supporting exhibits. In his motion and memorandum, Respondent argued that, pursuant to the undisputed facts in the summary judgment record, Appellants were not clients of Respondent, were not in privity with Respondent, and therefore could not bring a legal malpractice claim against Respondent. He further argued that Appellants failed to meet the exception to the privity requirement set out in *Donahue v. Shugart, Thompson and Kilroy, P.C.,* 900 S.W.2d 624 (Mo. banc 1995), in that Decedent did not execute a testamentary document memorializing her alleged intent to split L.B.'s one-third interest among Appellants.

Appellants filed an opposition to Respondent's motion for summary judgment, in which they urged the trial court to apply the *Donahue* privity exception. They also filed a response to Respondent's statement of uncontroverted material facts admitting most of the facts alleged.

The trial court granted Respondent's motion for summary judgment. The court relied on *Alberts v. Turnbull Conway, P.C.*, 641 S.W.3d 370, 376 (Mo. App. W.D. 2022), a recent decision of the Western District of this Court declining to extend the *Donahue* privity exception to impose a duty of care on attorneys to prospective beneficiaries when the attorney's alleged negligence was a failure to promptly draft and secure execution of a testamentary document. Appellants now appeal.

**Discussion**

In their sole point on appeal, Appellants argue the trial court erred in granting Respondent's motion for summary judgment because the trial court erroneously ruled that Appellants did not meet the *Donahue* privity exception. We affirm the summary judgment of the trial court.

Standard of Review

Our review of the trial court's grant of summary judgment is *de novo*. *Green v. Fotoohighiam*, 606 S.W.3d 113, 115 (Mo. banc 2020). In determining whether summary judgment is proper, we apply the same criteria as the trial court. *Id*. We will affirm the judgment of the trial court if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Id*.; Rule 74.04(c)(6). Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. *Fotoohighiam*, 606 S.W.3d at 116.

A defending party may establish a right to judgment as a matter of law by showing:

> (1) facts that negate any one of the claimant's elements facts, (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements, or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly-pleaded affirmative defense.

*ITT Com. Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 381 (Mo. banc 1993) (emphasis omitted).

Analysis

A plaintiff claiming legal malpractice by an attorney must prove four elements: (1) the existence of an attorney-client relationship; (2) negligence by the attorney; (3) proximate causation of plaintiff's damages; and (4) damages. *Duncan v. Dempsey*, 547 S.W.3d 815, 820 (Mo. App.

4

E.D. 2018). The failure to satisfy any one of these elements defeats a claim for legal malpractice. *Id.*

Generally at issue in cases like this is the first element of a legal malpractice claim, the existence of an attorney-client relationship. "The existence of an attorney-client relationship between the plaintiff and the attorney is an essential element because the duty to exercise reasonable care in the attorney's practice of the profession arises from that relationship." *Alberts v. Turnbull Conway P.C.*, 641 S.W.3d 370, 373 (Mo. App. W.D. 2022). "The attorney, with limited exceptions, owes no actionable duty to strangers or non-parties to the attorney-client relationship in the way legal responsibilities are performed." *Id.* (quoting *Meyer v. Carson and Coil*, 614 S.W.3d 618, 625 (Mo. App. W.D. 2020)).

All of that said, our Supreme Court in *Donahue v. Shugart, Thompson and Kilroy, P.C.,* 900 S.W.2d 624 (Mo. banc 1995), "created an exception to the traditional rule requiring privity in the form of the existence of an attorney-client relationship, and allowed non-client, intended beneficiaries of executed (but failed) testamentary transfers to sue the donor's attorney for legal malpractice." *Alberts*, 641 S.W.3d at 373.

Recently, the Western District of this Court declined "to extend the *Donahue* exception to the traditional privity requirement to permit a malpractice claim by a non-client prospective beneficiary for negligent failure to draft and secure execution of a testamentary document." *Id.* at 379. Judge Chapman, writing for the *Alberts* Court, reasoned that:

> imposing a duty before execution of the instruments to non-client *prospective* beneficiaries (such as Plaintiffs) to timely prepare testamentary instruments would interfere with (or at the very least compete with) the estate planning attorney's duty of undivided loyalty to the client to see that the client has adequate time to reflect on what he desires, including the opportunity to change his mind and/or execute a plan that is not what the non-client prospective beneficiary desires. *Id.* (emphasis in original).

5

The Court further distinguished *Donahue* on the basis that:

> *Donahue* . . . did not involve unexecuted testamentary instruments; did not therefore address whether to impose a duty of care, *ex ante*, to prospective non-client beneficiaries of unexecuted instruments; and did not thus divide (or dilute) the estate planning attorney's duty of undivided loyalty to his client in the preparation and execution of the testamentary instruments." *Id.*

Here, the trial court, relying on *Alberts*, rightly granted Respondent's motion for summary judgment because the privity exception set forth in *Donahue* does not apply.

The summary judgment record establishes, among other facts, that Decedent "allegedly" wanted to amend her revocable trust to remove her predeceased child, L.B., so that the trust would not distribute money to some of Decedent's grandchildren and not others. With the proposed amendment, Appellants each would receive one-half of L.B.'s one-third share, in addition to their own one-third share. Respondent never met with or spoke with Decedent to ascertain her intentions and mental capacity to make decisions related to amending her trust for a third time. On February 25, 2019, Decedent passed away without executing any amendment to the Second Amended Revocable Trust.

The undisputed material facts establish that Decedent failed to execute a third amendment to her trust prior to her death. Accordingly, Appellants are at best non-client prospective beneficiaries of the undrafted, unexecuted third amendment to the trust. *See Alberts*, 641 S.W.3d at 379. Attorneys do not owe a duty of care to non-client prospective beneficiaries of unexecuted testamentary documents and the *Donahue* privity exception does not apply, and for good reason. *See id.*

As the *Alberts* Court explained, expanding the *Donahue* exception to impose a duty on an estate planning attorney to non-client prospective beneficiaries, like Appellants here, to timely prepare and gain execution of testamentary documents would compromise the attorney's

6

undivided duty of loyalty to the client to determine her intent, including to execute a plan that may be contrary to what the non-client prospective beneficiaries desire. *Id.* at 375–76 ("Where the relevant testamentary documents are never executed (like this case), issues related to the testator's intent are far more tenuous than where . . . the testator's intent has been manifested in an executed document.")

This concern applies with additional force in the circumstances of this case. In *Alberts*, the decedent engaged the defendant lawyers to make changes to his existing estate planning documents and instructed the lawyers to draft amendments to his existing trust agreement to provide for specific distributions to the plaintiffs. The lawyers agreed to do so, but failed to amend and gain execution of the documents before the decedent's death. *Id.* at 371–72. Here, the uncontroverted facts are that, not only did Decedent not execute a third amendment prior to her death, Respondent never met or spoke with Decedent to ascertain her intentions and mental capacity to amend her trust a third time. Thus, no one can know with any confidence whether, as Appellants allege, Decedent wanted to amend her revocable trust to remove her predeceased child, L.B., so that Appellants would receive L.B.'s one-third share, or whether her intent diverged from that of Appellants.

The *Alberts* decision turned on the absence of an attorney-client relationship, privity, and a duty to prospective beneficiaries necessary to meet the first element of a legal malpractice claim. On the summary judgment record before us, other elements of Appellant's legal malpractice claim also fail as a matter of law. As to the second element, Appellants allege that Respondent's failure to meet or speak with Decedent and to timely draft and secure execution of the third amendment was negligent, and they may very well have been able to prove that at trial. But the third and fourth elements—that Respondent's negligence was the proximate cause of damages sustained by

7

Appellants—are not genuinely in dispute. Decedent's alleged intent to amend her trust to split L.B.'s one-third interest among Appellants is only alleged by Appellants, was never expressed by Decedent to Respondent, and is not evidenced by an executed testamentary instrument. "[T]he law of this state is, and for many years has been, well-settled that absent any ambiguity in the terms of a legal instrument, the intent of its maker, including the intent of a testator or the settlor of a testamentary or *inter vivos* trust, is to be ascertained from the four corners of the instrument without resort to parol evidence as to that intent." *Commerce Bank, N.A., v. Blasdel*, 141 S.W.3d 434, 444 (Mo. App. W.D. 2004) (en banc). Without proper proof of Decedent's intent to benefit Appellants by a third amendment to her trust, Appellants could not prove at trial that Respondent's alleged negligence in failing to draft and secure execution of the amendment was the proximate cause of Appellants' damages, or that they were damaged at all.

For these reasons, Respondent is entitled to judgment as a matter of law.

**Conclusion**

We affirm the summary judgment of the trial court.

_____
Cristian M. Stevens, J.

Robert M. Clayton, III, P.J., and
Philip M. Hess, J., concur.

8